# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| ADRIAN JUAREZ and WILLIAM PHILLIPS, | Civil Action No. |
| Plaintiffs, | **PLAINTIFFS' COLLECTIVE ACTION COMPLAINT** |
| v. | |
| GERDAU AMERISTEEL US, INC. and GERDAU MACSTEEL, INC., | |
| Defendants. | |

1

Plaintiffs Adrian Juarez ("Plaintiff Juarez") and William Phillips ("Plaintiff Phillips") (hereinafter, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this Collective Action Complaint under the federal Equal Pay Act against Defendants Gerdau Ameristeel US, Inc. ("Ameristeel") and Gerdau Macsteel, Inc. ("Macsteel") (together, "Defendants"). Plaintiffs complain and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action to challenge Defendants' policy and practice until Defendants changed their policies on or around January 2023, of discriminating against birth fathers in the provision of paid parental leave.[1]

2. During their employment with Ameristeel within the last three years,

---

[1] By way of background, this case is a follow up case against Defendant, Gerdau Macsteel, Inc., which alleged class claims Michigan-based male employees for violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. section 2000e-2, et seq.) based on the same theory as the instant case, which the parties agreed to settle and just received preliminary approval in the Eastern District of Michigan. *See*, *Johnson v. Gerdau Macsteel, Inc.*, USDC, Eastern District of Michigan, Case No. 23-CV-10719, Order Granting Preliminary Approval of Class Action Settlement, dated October 11, 2023 (ECF No. 10). Following the Michigan class settlement, Plaintiffs' counsel was retained by Plaintiff Phillips on February 17, 2023 and by Plaintiff Juarez on April 28, 2023 and circulated a draft nationwide Equal Pay Act complaint to Defendants' counsel on June 6, 2023 including nationwide Equal Pay Act collective action claims. Thereafter, the Parties entered into a tolling agreement on June 7, 2023 to toll Plaintiffs' nationwide Equal Pay Act collective action claims from June 7, 2023 for 150 days and agreed to attempt to resolve Plaintiffs' nationwide Equal Pay Act claims through pre-suit, private mediation after an exchange of informal discovery. In informal discovery, Defendants' counsel provided, among other things, Ameristeel's maternity leave policy and spreadsheets showing lists of its employees whose spouse gave birth to a child between April 21, 2020 and January 1, 2023 and/or requested FMLA leave related to pregnancy/childbirth/ and/or child bonding. On October 10, 2023, the Parties attended a private mediation where the Parties agreed to resolve Plaintiffs' nationwide Equal Pay Act collective action claims. The Parties agreed that Plaintiffs' will seek approval of the collective action settlement in the Northern District of Texas and will file the approval motion shortly. On January 24, 2024, Defendants' counsel informed Plaintiffs' counsel that Macsteel had inadvertently excluded approximately 74 potential class members from the mailing list in the prior filed *Johnson* action. The Parties subsequently agreed to add these 74 individuals to this Litigation as subclass members, i.e., as Potential Macsteel EPA Collective Action Members, while making them eligible for Individual Settlement Payments equal to those in the *Johnson* action should they opt-in to this action, and if so, making them subject to the same release of claims as the participating class members in the *Johnson* action.

Plaintiffs' partners both gave birth to their children. Plaintiffs requested parental leave from Ameristeel, but were denied any option other than to take their regular earned vacation time and paid time off.

3.     Pursuant to Defendants' pre-January 2023 paid parental leave policy, Defendants limited their entitlement to six-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters" to "the employee who gave birth." Accordingly, Plaintiffs were ineligible to take paid parental leave on the basis of their sex/gender (male).

4.     Plaintiffs initiate this action to challenge Defendants' pre-January 2023 policy that discriminated against male employees by affording birth fathers no paid parental leave, while affording birth mothers six weeks of paid parental bonding leave.

5.     By depriving birth fathers of paid parental leave benefits that are equal to what Defendants afforded to birth mothers, Defendants' pre-2023 policy and practice constituted gender discrimination in the terms and conditions of employment.

6.     This policy and practice constituted a gender-based classification and a sex-based stereotype and gender-based pay discrimination that violates the Equal Pay Act (29 U.S.C. § 206(d)) ("EPA").

7.     Defendants' pre-January 2023 policy is based on gender stereotypes about the caregiving roles of mothers and fathers and prevented Plaintiffs and other birth fathers from taking paid parental leave that was presumptively afforded to birth mothers.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs are asserting a federal claim under the EPA.

9. This Court has personal jurisdiction over Defendants, as some of the alleged unlawful employment practice was committed in this District and Division at Ameristeel's steel mill in Ellis County, and employment records relevant to such employment practice are maintained and administered in this District.

10. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Ameristeel operates and does business in Ellis County, maintains business records in Midlothian, Texas, and some of the alleged unlawful employment practices were committed in this District, at Ameristeel's steel mill in Ellis County.

## THE PARTIES

11. Named Plaintiff Juarez is and was at all relevant times a resident of Texas and is a former employee of Ameristeel. Specifically, Plaintiff Juarez resides in Midlothian, Texas in Ellis County in the Northern District of Texas. Juarez is within the jurisdiction of this Court.

12. Named Plaintiff William Phillips is and was at all relevant times a resident of Georgia and an employee of Ameristeel at its steel mill in Cartersville, Georgia. Phillips submits himself to the jurisdiction of this Court.

13. Plaintiffs file this action on behalf of themselves and other male employees

of Defendants in the United States who are similarly situated. Plaintiffs also file this action on behalf of a defined group of 74 male employees of Macsteel in the United States who are similarly situated.

14. Ameristeel is and was at all relevant times a steel production company incorporated under the laws of the state of Florida. Macsteel is and was at all relevant times a steel production company incorporated under the laws of the state of Delaware.

15. Defendants are authorized to do business in Texas pursuant to the state laws of Texas, and do conduct business operations in Texas. Defendants also operate steel manufacturing facilities in at least 13 states, including, but not limited to, Texas, Georgia, Iowa, Arkansas, and Indiana.

16. At all times relevant to this Complaint, Defendants were employers within the meaning of the EPA.

17. Defendants are subject to the Court's jurisdiction and may be served with process through its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## FACTUAL ALLEGATIONS

18. As noted, Plaintiff Juarez was employed by Ameristeel at its Midlothian, Texas steel mill between October 23, 2017 to February 27, 2023.

19. Plaintiff Phillips was employed by Ameristeel at its Cartersville, Georgia steel mill as a Stand Builder from September 21, 2020 to September 30, 2022.

20. Plaintiffs were not represented by a union during his employment with Ameristeel.

21. Plaintiff Juarez's partner gave birth to their child on June 15, 2022.

22. Plaintiff Phillip's partner gave birth to their child on May 25, 2021.

23. Upon the birth of Plaintiffs' children, Ameristeel provided Plaintiffs with no paid parental leave after they requested paid parental leave.

24. Plaintiffs were forced to use approximately two weeks of their earned vacation time and other paid time off.

25. At the time of Plaintiffs' children's births and through December 31, 2022, Defendants' parental leave policy provided six weeks of paid maternity leave for "the employee who gave birth," and "for such things as baby bonding and/or dealing with baby medical matters."

26. From Plaintiff Juarez's conversations with Ameristeel regarding its pre-January 2023 parental leave policy, he understood that if he were a birth mother, he would have been eligible to receive 6-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters," but that as a birth father, he was excluded from receiving any paid parental leave under Ameristeel's challenged policy. Plaintiff Phillips was told the same thing and understood the same pre-January 2023 policy.

/ / /

27. Defendants' pre-January 2023 maternity leave policy states:

<u>Length of Leave</u> – Following the birth of a child, **the employee who gave birth** will be eligible for six (6) workweeks of short-term disability for natural birth, or eight (8) workweeks of short-term disability for C-section. Short-term disability pays 60% of base pay up to a defined weekly maximum. For Salaried Exempt employees, the first two (2) workweeks of short-term disability are paid at 100% of base pay. Following the end of the six (6) weeks or eight (8) weeks of short-term disability, **the same employee will also be entitled to six (6) consecutive weeks of Maternity Leave, paid at 100% of base pay. This leave is provided for such things as baby bonding and/or dealing with baby medical matters.** It must be taken immediately following disability leave, and may not be taken intermittently. If the employee returns to work prior to using the full six (6) weeks of Maternity Leave, the employee has forfeited use of any additional Maternity Leave. (emphasis added)

28. Defendants' pre-January 2023 maternity leave policy is facially and unequivocally illegal; it is gender discriminatory under Title VII of the Civil Rights Act (42 U.S.C. § 2000e-2(a)) and the Equal Pay Act (29 U.S.C. § 206(d)(1) and 215(a)(2)), as it excludes male employees (i.e., fathers who did not give birth to their children) from "baby bonding and/or dealing with baby medical matters" which are unrelated to maternal recuperation from childbirth. The law is clear that gender-discriminatory employee leave time is unlawful and perpetuates the "pervasive sex-role stereotype that caring for family members is women's work." *Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721, 731 (2003).

29. The Equal Employment Opportunity Commission ("EEOC")—the federal agency that investigates alleged violations of Title VII and the Equal Pay Act—has issued guidance stating that "parental leave must be provided to similarly situated men and women on the same terms[,]" and if "an employer extends leave to new mothers

7

beyond the period of recuperation from childbirth (e.g. to provide the mothers time to bond with and/or care for the baby), it cannot lawfully fail to provide an equivalent amount of leave to new fathers for the same purpose." U.S. Equal Employment Opportunity Commission, No. 915.003, *Enforcement Guidance on Pregnancy Discrimination and Related Issues*, Sec. I.C.3 (June 25, 2015).[2] This EEOC enforcement guidance explicitly applies to "leave for purposes of bonding with a child and/or providing care for a child." *Id.*

30. Courts are similarly clear that parental leave policies like Defendants' pre-January 2023 policy that provide paid maternity leave only to women who gave birth are unlawful because they discriminate on the basis of sex and/or gender. *See Schafer v. Board of Public Education of the School District of Pittsburgh,* 903 F.2d 243, 248 (3d Cir. 1990) (holding that a leave policy "where the childrearing leave is made available to females only, without a showing of a disability related to pregnancy or childbearing" is, as a matter of law, "per se void for any leave granted beyond the period of actual physical disability on account of pregnancy, childbirth or related medical conditions."); *Rotondo v. JPMorgan Chase Bank, N.A.*, 2019 U.S. Dist. LEXIS 201616, at *14 (S.D. Ohio Nov. 20, 2019) (noting, in an order granting final approval to a class action settlement, that "the class had a substantial likelihood of success on the merits" where male employees under Chase's leave policy, unlike female employees, "were

---

[2] See https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#IC3

required to make the additional showing that their spouse is either incapacitated or has returned to work prior to being deemed eligible for primary caregiver status[,]" because "[e]mployer policies may not distinguish between male and female employees based on . . . gender stereotypes related to women's presumed role as caregivers.") (citing *Cal. Fed. Sav. 13 & Loan Ass'n v. Guerra*, 479 U.S. 272, 279, n.10, 290 (1987)); *Knussman v. Maryland*, 272 F.3d 625, 636 (2001) (holding that Maryland's policy and practice of refusing to provide FMLA leave to fathers violated equal protection, and noting that "gender classifications that appear to rest on nothing more than conventional notions about the proper station in society for males and females have been declared invalid time and again by the Supreme Court."); *Chavkin v. Santaella,* 81 A.D.2d 153, 157-58 (N.Y. App. Div. 1981) (noting that "there is an apparent discrimination" with regard to a leave policy "that a pregnant woman who is able to work is authorized to utilize her sick leave, while a man who has fathered a child and been given home care leave is denied the right to utilize sick leave."); *Johnson v. Univ. of Iowa*, 431 F.3d 325, 328 (8th Cir. 2005) ("If the leave given to biological mothers is granted due to the physical trauma they sustain giving birth, then it is conferred for a valid reason wholly separate from gender.").

31. Upon information and belief, Defendants' pre-January 2023 policy and practice of allowing birth mothers—but not birth fathers—6-weeks of fully-paid baby bonding parental leave prevented, discouraged, and deterred Plaintiffs and other birth

fathers employed by Defendants from seeking and/or being allowed to receive 6-weeks of fully-paid baby bonding parental leave for which they would otherwise have been eligible had they been birth mothers.

32. Upon information and belief, many birth fathers were prevented, discouraged, and deterred from applying for 6-weeks of fully-paid baby bonding parental leave or were outright denied the opportunity to apply for the same under Defendants' pre-January 2023 parental leave policy and Defendants' pattern or practice in implementing its pre-January 2023 parental leave policy.

33. Defendants have discriminated against Plaintiffs and other birth fathers employed by Defendants pursuant to a company-wide policy, pattern, or practice that discriminates against males (i.e., birth fathers) and that causes them to receive employee benefits and pay that are inferior to those provided to females (i.e., birth mothers).

## **COLLECTIVE ACTION ALLEGATIONS**

34. Plaintiffs bring this action under the EPA as a collective action for monetary relief pursuant to 29 U.S.C. § 216(b) on behalf of the following Ameristeel Collective Action Members:

> All males who fathered a baby through natural birth (i.e., not adoption or placement through foster care) at any time from April 21, 2020 through December 31, 2022 (the "EPA Covered Period") while they were employed by Gerdau Ameristeel US, Inc. in a non-union position

in the United States (the "Collective Action Members").

35. Plaintiffs also bring this action under the EPA as a collective action for monetary relief pursuant to 29 U.S.C. § 216(b) on behalf of the following Macsteel Collective Action Members:

> All males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time from August 30, 2019 through December 31, 2022 (the "Macsteel EPA Covered Period") while they were employed by Gerdau Macsteel, Inc. in a non-union position in the United States (the "Macsteel Collective Action Members").

36. Plaintiffs and the Ameristeel Collective Action Members and Macsteel Collective Action Members are similarly situated pursuant to 29 U.S.C. § 216(b) because Plaintiffs and the Ameristeel Collective Action Members and Macsteel Collective Action Members were all subject to Defendants' pre-January 2023 uniform and discriminatory parental baby bonding leave policy that excluded them as male employees from six weeks paid leave time offered to female employees.

37. Plaintiffs seek to be appointed as representatives of the Ameristeel Collective Action Members and of the Macsteel Collective Action Members.

38. There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to

join this lawsuit and/or settlement of this lawsuit. Notice and/or settlement notices should be sent to the Ameristeel Collective Action Members and Macsteel Collective Action Subclass Members pursuant to 29 U.S.C. § 216(b).

39. Questions of law and fact common to Plaintiffs, Ameristeel Collective Action Members, and Macsteel Collective Action Members include, but are not limited to, whether they were subject to a discriminatory parental baby bonding leave policy that excluded them as male employees from six weeks of paid bonding time offered to female employees during the Ameristeel EPA Covered Period or the Macsteel EPA Covered Period.

40. Defendants are aware or should have been aware that the EPA and federal law require it to provide equal paid bonding time to both male and female employees following the birth of a child.

41. As part of their regular business practice, Defendants willfully and repeatedly engaged in a uniform pattern, practice, or policy of violating the EPA with respect to Plaintiffs, Ameristeel Collective Action Members, and Macsteel Collective Action Members.

/ / /

/ / /

/ / /

/ / /

# CLAIMS FOR RELIEF

## First Cause of Action:

## Violation of the Equal Pay Act, 29 U.S.C. § 206(d) and 215(a)

## On behalf of Plaintiffs, the Ameristeel Collective Action Members, and the Macsteel Collective Action Members

42. Plaintiffs hereby re-allege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

43. The EPA provides in part that, "No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . ." 29 U.S.C. § 206(d)(1). See also 29 U.S.C. § 215(a)(2).

44. According to the Equal Employment Opportunity Commission ("EEOC"), which is the U.S. government agency charged with enforcing federal anti-discrimination laws, two-tiered parental bonding and leave policies, like the one at issue here, are discriminatory, and they violate the federal Equal Pay Act.

45. Indeed, the EEOC has issued enforcement guidance stating that, "Leave related to pregnancy, childbirth, or related medical conditions can be limited to women affected by those conditions. ***However, parental leave must be provided to similarly***

*situated men and women on the same terms.*" See https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues (emphasis added).

46. In this case, Defendants have engaged in nationwide violations of the EPA, harming the Ameristeel Collective Action Members and Macsteel Collective Action Members, by adopting and administering their pre-January 2023 paid baby bonding parental leave policy and practice which discriminates on the basis of sex by allowing birth mothers six-weeks of paid baby bonding parental leave, while not allowing paid baby bonding parental leave for birth fathers, thus depriving them of equal pay and benefits for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

47. The unlawful discrimination contained in this count has resulted in Defendants' unlawful withholding of up to six weeks of wages due to Plaintiffs, the Ameristeel Collective Action Members (during the Ameristeel EPA Covered Period), and Macsteel Collective Action Members (during the EPA Covered Subclass Period).

48. The unlawful discrimination contained in Count I was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court grant the following relief:

  a. Certifying this action as a Collective Action under the EPA on behalf

of Plaintiffs and the Ameristeel Collective Action Members;

b. Certifying a Collective Action under the EPA on behalf of Plaintiffs and the Macsteel Collective Action Members;

c. Designating Plaintiffs as the Collective Action representatives, and undersigned counsel as Collective Action counsel;

d. Promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Ameristeel Collective Action Members (or to all male employees of Ameristeel so that they can self-identify as Collective Action Members if complete and accurate records do not exist as to which male employees' partners had children within the last three years) and to all Macsteel Collective Action Members, which (1) apprises them of the pendency of this action and/or any settlement of same and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join as Party Plaintiff and/or an opt in form for settlement purposes pursuant to 29 U.S.C. § 216(b);

e. Granting declaratory relief, including but not limited to a declaration that Defendants' pre-January 2023 paid baby bonding parental leave policy violated the EPA;

f. Granting monetary relief, including compensation to Plaintiffs, all Ameristeel Collective Action Members, and all Macsteel Collective

Action Members who opt-in for the value of six weeks of lost paid baby bonding parental leave time suffered by Plaintiffs, the Ameristeel Collective Action Members, and the Macsteel Collective Action Subclass Members, plus interest as authorized by law;

g. Awarding Plaintiffs, the Ameristeel Collective Action Members, and the Macsteel Collective Action Members who Opt-in liquidated damages amounting to an additional amount equal to their actual damages, in addition to their actual damages, pursuant to Section 216(b);

h. Awarding such reasonable attorneys' fees and costs to the extent allowable by law; and

i. Awarding such other and further relief as this Court deems appropriate.

### JURY DEMAND

Plaintiffs demand a jury on all matters alleged herein.

Dated: March 7, 2024                    Respectfully submitted,

<u>/s/ Craig J. Ackermann</u>
Craig J. Ackermann (Texas Bar No. 24001620)
Brian W. Denlinger*
Ackermann & Tilajef, P.C.
315 S. Beverly Drive, Ste. 504
Beverly Hills, CA 90212
T: (310) 277-0614
F: (310) 277-0635
cja@ackermanntilajef.com

16

bd@ackermanntilajef.com

Cheryl B. Legare*
Legare, Attwood & Wolfe, LLC
Two Decatur Town Center,
Suite 380, 125 Clairemont Ave.
Decatur, GA 30030
(470) 823-4000
cblegare@law-llc.com

Matthew J. Clark*
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600
matt@unionlaw.net

*Attorneys for Plaintiffs*
**pro hac vice admission forthcoming*