# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

**ADRIAN JUAREZ ORTIZ** et al., on behalf
of himself and all others similarly situated,

Plaintiffs,

v.

**GERDAU AMERISTEEL US, INC**.
and **GERDAU MACSTEEL, INC**.,

Defendants.

Case No. 3:24-cv-00572-S

HON. KAREN GREN SCHOLER

**PLAINTIFFS' APPENDIX IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL
OF COLLECTIVE ACTION SETTLEMENT AND NOTICE OF COLLECTIVE
ACTION SETTLEMENT**

Pursuant to Local Rules 7.1(i) and 7.2(e), Plaintiffs file this Appendix in Support of their Unopposed Motion for Approval of Collective Action Settlement and Notice of Collective Action Settlement ("Motion"). Each page of this Appendix is numbered sequentially in the lower, right-hand corner.

Plaintiffs rely on the following in support of their Motion, in addition to the filings and pleadings in this case.

| EXHIBIT | DOCUMENT | PAGES |
|---------|----------|-------|
| A | Declaration of Craig Ackermann | 001 – 094 |
| B | Declaration of Adrian Juarez Ortiz | 095 – 099 |
| C | Declaration of William Phillips | 100 – 103 |

Dated: April 12, 2024

/s/ Craig J. Ackermann
Craig J. Ackermann, Esq.
Brian W. Denlinger, Esq.
ACKERMANN & TILAJEF, P.C.
315 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212
Telephone: (310) 277-0614
E-mail: cja@ackermanntilajef.com
        bd@ackermanntilajef.com

Matthew J. Clark, Esq.
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600
Email: matt@unionlaw.net

Cheryl Legare, Esq.
Legare, Attwood & Wolfe, LLC
125 Clairemont Ave., Ste. 380
Decatur, Georgia 30030
Email: cblegare@law-llc.com

*Attorneys for Plaintiffs*

# EXHIBIT A
# TO APPENDIX

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

**ADRIAN JUAREZ ORTIZ** et al., on
behalf of himself and all others similarly
situated,

Plaintiffs,                                    Case No. 3:24-cv-00572-S

v.                                             HON. KAREN GREN SCHOLER

**GERDAU AMERISTEEL US, INC**. and
**GERDAU MACSTEEL, INC**.,

Defendants.


## DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND NOTICE OF COLLECTIVE ACTION SETTLEMENT

I, Craig J. Ackermann, declare and state as follows:

1.       I am an attorney licensed to practice law before the federal and state courts of
California, Texas, and Washington State, as well as the federal courts of Michigan. I am the
founding and managing shareholder of the law firm Ackermann & Tilajef, P.C. ("A&T"), co-
counsel for the named Plaintiffs in the above-captioned action. I have been admitted to the Fifth
and Ninth Circuit Courts of Appeals. In 2018, I also became a member of the Bar of the U.S.
Supreme Court. I am over 18 years of age. I have personal knowledge of the facts set forth in this
declaration and could and would testify competently to them.

2.       I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval
of Collective Action Settlement and Notice of Collective Action Settlement (the "Motion").

3.       I am not aware of any conflicts between the named Plaintiffs, the Potential
Ameristeel EPA Collective Action Members, and/or the Potential Macsteel EPA Collective

Action Members in this matter. Nor is there any conflict between my firm and the Plaintiffs, the Potential Ameristeel EPA Collective Action Members, and/or the Potential Macsteel EPA Collective Action Members. Plaintiffs have prosecuted this matter vigorously since its inception. My co-counsel and I have explained the claims in this case as well as the responsibilities of being a named Plaintiff in an EPA collective action to the named Plaintiffs, and we have been assured that they will continue to represent the interests of the Potential Ameristeel EPA Collective Action Members and the Potential Macsteel EPA Collective Action Members.

4.      Concerning my experience, I have been practicing employment law exclusively since 1997, and have been appointed lead or co-lead class counsel in more than 300 wage and hour and other employment law class actions in California and Washington since 2006.

5.      In 1994, I received a B.A. with honors and graduated Phi Beta Kappa from the University of Texas at Austin. In 1997, I graduated from the University of Texas School of Law in Austin, Texas, and I became a member of the Bar of the State of Texas in 1997. From 1997 through 2000, I was an associate in the labor and employment law group for Jenkens & Gilchrist, P.C. ("J&G"), in the firm's Dallas, Texas office, where I represented Fortune 1000 companies, including Hartford Insurance, Belo Corporation, and Alcatel, as second-chair in various employment-related matters, including several class action cases. While employed by J&G, I drafted a number of summary judgment motions in cases where we obtained summary judgment for the defendants, including several that were reported on Westlaw. *See Wayne v. The Dallas Morning News, Inc.*, CIV.A.No.3-98-CV-0711-L, 1999 WL 1146840 (N.D. Tex. Nov. 24, 1999); *Mieritz v. Hartford Fire Insurance Co.*, No. Civ.A.3:99-CV-121-R, 2000 WL 422909 (N.D. Tex. April 17, 2000). From 2000 through mid-2003, I worked in New York City for a plaintiffs' side employment law firm, Arenson, Ditmar & Karban, where I was involved for several years, *pro*

*hac vice*, in a second-chair capacity representing 150 individually-named plaintiffs in a large sexual harassment case against a major Wall Street bank that was eventually resolved for $23.5 million. In terms of the number of plaintiffs and the size of the ultimate settlement, this sexual harassment case was at that time the second largest sexual harassment case in U.S. history. There were over 60 depositions taken and defended in that case prior to trial. In mid- and late-2003, I worked as an associate in the Labor and Employment Law Section of Mitchell, Silberberg & Knupp, LLP in Los Angeles, where we represented large entertainment companies in various employment-related litigations, including several class and/or collective actions.

6.      I became a member of the Bar of the State of California in early 2004. From February 2004 through the present, I have been the founding and managing shareholder of A&T. My firm and I have been appointed as class counsel in approximately ten employment cases where ***contested*** class certification motions were fully briefed, and class certification was granted, including most recently the following federal court wage and hour class actions (1) *Martinez v. Knight Transportation*, Case No. 1:16-cv-01730-DAD (Hon. Dale A. Drodz) (E.D. Cal. December 3, 2018) (order granting Plaintiff's Motion for Class Certification certifying class of 4,000+ truck drivers with claims of unpaid rest breaks and non-productive time); and (2) *Moss v. USF Reddaway, Inc.,* No. 5:15-CV-01541-JAK-FFM, (C.D. Cal. June 30, 2017) (Hon. John A. Kronstadt) (Order Granting Plaintiff's Motion for Class Certification in unpaid rest break trucker class action for 540 line haul drivers).

7.      In February 2018, I became admitted as a member of the Bar of the State of Washington and my firm opened up an office in Tacoma, Washington, where we exclusively handle employment-law cases, principally wage and hour class actions, but also numerous Title VII cases. I remain a member in good standing of the Texas, California, and Washington state

Bars. I am also admitted and in good standing in numerous federal district courts in Texas, California, Washington, Michigan, and other states.

8.      On numerous occasions, including in recent years, various U.S. federal district court judges in California and Washington State have explicitly recognized my skill and expertise in the area of employment law and employment law class actions. *See e.g., Kim v. Sheraton Operating Corporation*, No. 2:17-cv-09247-FMo, Dkt. 94 (C.D. Cal. June 23, 2021) ("Having reviewed the declarations of proposed counsel…the court finds that plaintiff's counsel are competent, and there are no issues as to the adequacy of representation") (Hon. Fernando M. Olguin); *Pagh v. Wyndham Vacation Ownership, Inc.*, Case No. 8:19-cv-00812-JWH-ADSx, Docket No. 52 (C.D. Cal. Order Granting Plaintiffs' Motion for Attorneys' Fees and Costs [ ECF No. 46], dated March 23 2021), the Honorable John W. Holcomb, p. 6 (noting my "extensive experience in labor and employment litigation"); *Bykov v. DC Transportation Services, Inc.*, Case No. 2:18-cv-1691 DB, Docket No. 29 (E.D. Cal., Order dated March 3, 2020), (Hon. Deborah Barnes, at pp. 7 and 11 noted that "plaintiff's counsel are experienced litigators of class actions involving the precise claims here, i.e., wage and hour disputes involving truck drivers" and "[p]laintiff's counsel has collectively represented hundreds of truck drivers in similar wage and hour cases"); *Moss v. USF Reddaway, Inc.,* Case No. 5:15-cv-01541-JAK-FFM, Docket No. (C.D. Cal. Order Granting Final Approval, dated July 25, 2018, where the Hon. Judge John Krondstadt, at p. 13 of 15 noted that "The attorneys and paralegals who worked on this matter have substantial experience in complex employment litigation … For example, Craig Ackermann has served as lead counsel or co-lead counsel in more than 200 class actions during his 21-year career…"); *Santamour v. UPS Freight, Inc.,* Case No. 2:17-cv-00196, ECF No. 33 (E.D. Wash. Order Granting Final Approval, dated June 26, 2018) (the Hon. Chief Judge Thomas Rice of the Eastern

4

**004**

District of Washington noted: "The Court, based on its independent review as well as its review of the supporting documents submitted by Plaintiffs, finds the rates billed by Plaintiffs' counsel and paralegals are commensurate with the prevailing rates for similar representation in the relevant market"); *Hollis v. Union Pacific Railroad Co.*, Case No. 5:17-cv-02449-JGB-SHK, Docket No. 28 (C.D. Cal. Order Granting Final Approval and Attorneys' Fees dated Sept. 19, 2018) (the Hon. Jesus G. Bernal, at pp. 12-13 noted that "the Court reviewed the experience of the respective attorneys and finds the amount billed per hour to be reasonable … For instance, Craig Ackermann has been an employment attorney since 1997 and has handled numerous federal and state employment class action cases"); *Barrios v. Diamond Contract Services, Inc.,* 2012 U.S. Dist. LEXIS 197191 (C.D. Cal. Nov. 9, 2012) (awarding attorneys' fees of $249,914 post-trial and post-appeal to Ackermann & Tilajef, P.C. for successful plaintiff's verdict in a Title VII and FEHA retaliation case and recognizing counsel's skill as an employment trial lawyer) (Hon. Consuelo Marshall); *Bond v. Ferguson Enterprises, Inc.,* 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011) (A&T "has significant experience litigating class actions, serving as class counsel, [and] representing plaintiffs in wage and hour litigation", and approving a 1.75 lodestar multiplier on a cross-check) (Hon. Oliver Wanger).

9.      Notably, on January 27, 2016, after 7 years of hotly contested litigation, including class certification, multiple summary judgment motions, decertification, and preparation for the phase 1 liability trial, I was able to resolve, as lead counsel and sole class counsel, the certified class action wage and hour case of *Jack Morrison v. Knight Transportation, Inc*., Tulare County Superior Court, Case No. 228016, for a maximum amount of $2.25 million to the class of 4,100 drivers, with attorney's fees to be subsequently decided on a contested motion. In that case, the Honorable Tulare County Superior Court Judge Lloyd Hicks, awarded my firm—the sole class

counsel on that case—an additional amount of $1,125,000 in fees for our 2,700 hours of work, including taking and defending more than a dozen depositions, obtaining class certification, defeating decertification, defeating two summary judgment motions, and fully preparing for the phase 1 liability trial.

10.     I have also successfully tried employment cases to verdict in federal court. In December 2012, for example, I and my firm obtained a Final Judgment in the amount of $318,913.09 in a Title VII and FEHA retaliation case after a general jury verdict for the Plaintiff following a full jury trial and a successful appeal to the Ninth Circuit from the district court's denial of Plaintiff's motion for attorneys' fees. *See* Final Judgment, *Barrios v. Diamond Contract Services, Inc.*, Case No. 2:07-cv-03500-CBM-FMO (C.D. Cal. Dec. 20, 2012), ECF No. 138 (final judgment entered for Plaintiff in the amount of $318,913.09); *see also Barrios v. Diamond Contract Services, Inc.*, 461 F. App'x 571 (9th Cir. Dec. 13, 2011) (reversing original district court judge's denial of motion for attorneys' fees).

11.     My firm and I are currently serving as lead counsel or co-lead counsel in dozens of employment law class and/or collective actions pending in state and federal courts in California, Washington State, and elsewhere. As noted, our firm has handled many large employment law class actions both alone and in conjunction with other co-counsel firms, and A&T will be able to commit whatever additional resources may be required to represent the Plaintiffs and Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members in this matter.

12.     A&T Shareholder Brian Denlinger received his law degree with distinction from the University of Iowa College of Law in 2012, where he as a Managing Editor of the *Journal of Corporation Law*, and was admitted to the practice of law in Colorado in 2012 and Washington

6

State in 2018. Beginning in 2013, Mr. Denlinger was the principal officer of his own law firm, where he represented plaintiffs in employment matters, including employment discrimination actions. Mr. Denlinger joined A&T as a Senior Associate in 2017, and he became a Shareholder in 2022. Mr. Denlinger has represented employees in numerous Washington and California wage and hour class actions that have received approval of the Courts, and he has been involved in numerous multi-plaintiff and individual employment discrimination actions, including sexual and racial harassment cases, retaliation cases, and class actions under Title VII and other civil rights laws seeking equal pay and promotions. Since 2017, Mr. Denlinger has been appointed as adequate counsel in over 100 class action cases by federal and state courts throughout Washington State. Mr. Denlinger is licensed to practice law in the States of Colorado and Washington, and is a member of the Bars of the U.S. District Court for the District of Colorado, the U.S. District Court for the Western District of Washington, the U.S. District Court for the Eastern District of Washington, the U.S. District Court for the Western District of Michigan, and the Ninth Circuit Court of Appeals.

13.     Matthew Clark is a shareholder at Gregory, Moore, Brooks & Clark, P.C. He is admitted to practice law in the State of Michigan, the U.S. District Courts for the Eastern and Western Districts of Michigan, the U.S. District Court for the District of Columbia, and the U.S. Courts of Appeal for the Fourth, Sixth, Ninth, and District of Columbia Circuits. Mr. Clark has been admitted *pro hac vice* in federal and state courts in Arizona, California, Iowa, Maryland, New Jersey, Ohio, and Virginia. Mr. Clark graduated from Wayne State University Law School in 2012, having authored a student publication in the Michigan Environmental Law Journal, and was admitted to the State Bar of Michigan in 2012. Beginning in 2013, Mr. Clark was the principal officer of his own firm, representing plaintiffs in employment discrimination litigation. He

7

joined Gregory, Moore, Brooks & Clark, P.C. in 2014 and became a shareholder in 2019. Mr. Clark specializes in representing employees and unions in all aspects of legal representation, including employment discrimination. Mr. Clark has secured millions of dollars representing workers in numerous multi-plaintiff workplace gender discrimination cases. *See e.g., Acuff et al. v. Dy N Fly, LLC et al.*, E.D. Mich. Case No. 2:22-CV-12329 (four-plaintiff Title VII/ ELCRA gender discrimination case); *Baltierra et al. v. Alpena Oil Company*, Mich. 34th Circ. Ct. Case. No. 20-724984-CD (eight-plaintiff ELCRA gender discrimination case); *Barton et al. v. Melco, Inc.*, E.D. Mich. Case No. 17-cv-11108 (five-plaintiff Title VII/ ELCRA gender discrimination case); *Fisher et al. v. Mich. Dep't. Corrections et al.*, W.D. Mich. Case No. 1:20-CV-00302 (four-plaintiff Title VII/ ELCRA gender discrimination case); *Gardner et al. v. AdvisaCare, Inc.*, E.D. Mich. Case No. 2:20-cv-12451 (three-plaintiff Title VII/ ELCRA gender discrimination case). Mr. Clark was Plaintiffs' counsel in the employment class action case titled *Louise Robinson v. Paragon Systems, Inc.*, Cal. Sup. Ct., Los Angeles County, Case No. BC720142, which received final approval on April 1, 2021. Mr. Clark was also counsel for over 450 opt-in plaintiffs in the Fair Labor Standards Act overtime case *Howard et al. v. Post Foods*, W.D. Mich. Case No. 1:19-cv-00570. Mr. Clark understands his obligations to fairly and adequately represent the interests of the collective, and has done so here. Mr. Clark and his firm have the financial resources and expertise to bring this case and to represent the collective, whether or not the Court approves the Settlement. To the best of Mr. Clark's knowledge after a diligent search, there are no conflicts between him or his firm, on the one hand, and the Potential Ameristeel EPA Collective Action Members and/or the Potential Macsteel EPA Collective Action Members, on the other hand. The combination of all the Plaintiffs' counsel together here is more than adequate to represent the interests of the collective.

14.    Cheryl Legare is a founding partner at Legare, Attwood & Wolfe, LLC in metro-Atlanta, Georgia, an employment law boutique that she and her partners founded in 2015. Between December 2010 and April 2015, Ms. Legare was a partner with The Buckley Firm, LLC (formerly known as Buckley & Klein, LLP and currently known as Buckley Bala Wilson Mew LLP), where she had been an associate for three years. Ms. Legare has been admitted to practice in the state of Georgia since 2002. She is a member in good standing of the State Bars of Georgia and South Carolina. She is admitted to practice before the Georgia Supreme Court, the Georgia Court of Appeals, all trial courts in Georgia, the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the United States District Courts for the Northern and Middle Districts of Georgia. Ms. Legare graduated from the Georgia State University College of Law in 2002. Ms. Legare's practice focuses exclusively on employment litigation. Since 2007, Ms. Legare's practice has focused almost entirely on plaintiff-side employment litigation. Ms. Legare has acted as lead counsel or co-counsel in hundreds of employment discrimination, retaliation, and civil rights matters. Ms. Legare has tried and arbitrated numerous cases as lead counsel and has presented oral argument in employment cases in the Eleventh Circuit Court of Appeals.

## CASE BACKGROUND AND THE TOLLING AGREEMENT[1]

15.    Plaintiff Juarez worked for Defendant Gerdau Ameristeel US, Inc. ("Ameristeel") at its Midlothian, Texas steel mill between October 23, 2017 and February 27, 2023, and Plaintiff

---

[1] By way of background, this case is a follow up case to a previous lawsuit against Defendant Gerdau Macsteel, Inc. ("Macsteel"), which alleged class claims Michigan-based male employees for violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. section 2000e-2, *et seq*.) based on the same theory as the instant case, which the parties agreed to settle and which received final approval in the Eastern District of Michigan. *See Johnson v. Gerdau Macsteel, Inc.*, Case No. 23-CV-10719-BAF-CI, Order Granting Plaintiffs' Unopposed Motions for Final Approval of Class Action Settlement, ECF No. 15 (E.D. Mich. Feb. 29, 2024) (hereinafter "*Johnson* action").

Phillips worked for Ameristeel at its Cartersville, Georgia steel mill between September 21, 2020 and September 30, 2022. Plaintiff Juarez's partner gave birth to their child on June 15, 2022, and Plaintiff Phillips' partner gave birth to their child on May 25, 2021. Upon the birth of Plaintiffs' children, Ameristeel provided Plaintiffs with no paid parental leave after they requested paid parental leave, and Plaintiffs were both forced to use approximately two weeks of their earned vacation time and other paid time off. At the time of Plaintiffs' children's birth, Ameristeel's parental leave policy—which only applied to non-union positions—provided a much more generous 12-14 weeks of paid maternity leave for "the employee who gave birth," including six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters." Specifically, Ameristeel's parental leave policy, which is the subject of this action, stated the following in its entirety:

> <u>Length of Leave</u> – Following the birth of a child, the employee who gave birth will be eligible for six (6) workweeks of short-term disability for natural birth, or eight (8) workweeks of short-term disability for C-section. Short-term disability pays 60% of base pay up to a defined weekly maximum. For Salaried Exempt employees, the first two (2) workweeks of short-term disability are paid at 100% of base pay. Following the end of the six (6) weeks or eight (8) weeks of short-term disability, the same employee will also be entitled to six (6) consecutive weeks of Maternity Leave, paid at 100% of base pay. This leave is provided for such things as baby bonding and/or dealing with baby medical matters. It must be taken immediately following disability leave, and may not be taken intermittently. If the employee returns to work prior to using the full six (6) weeks of Maternity Leave, the employee has forfeited use of any additional Maternity Leave.

16.    Plaintiff Phillips retained Plaintiffs' counsel in this matter in February 2023. On June 7, 2023, Plaintiffs—intending to allege individual and nationwide collective action claims for gender-based discrimination in violation of the EPA—entered into a Tolling Agreement with Ameristeel to toll their gender-based discrimination claims under the EPA and the EPA claims of the Potential Ameristeel EPA Collective Action Members.

**SETTLEMENT NEGOTIATIONS AND PLAINTIFFS' COUNSEL'S ROLE**

17.    Subsequent to the Parties entering into a Tolling Agreement, the Parties, through their attorneys, engaged in informal settlement discussions regarding the matter, including an exchange of discovery documents and information and an all-day, private mediation session. Plaintiffs' counsel initially interviewed Plaintiffs to investigate how their parental leave requests were treated, their interactions with Ameristeel's human resources department, and other facts. Plaintiffs also provided their counsel with a copy of the paid parental leave policy at issue in this action. From June 2023 through October 2023, the Parties engaged in settlement discussions and informal discovery to learn about Ameristeel's parental leave policy and how Potential Ameristeel EPA Collective Action Members were impacted by the policy.

18.    In September 2023, Ameristeel provided Plaintiffs with informal discovery documents and information, including a spreadsheet from Ameristeel's leave administrator showing non-union employees who requested FMLA leave during the Ameristeel EPA Covered Period for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Ameristeel's group health plan during the Ameristeel EPA Covered Period. Before mediation, Plaintiffs' counsel conducted a thorough investigation into the facts of this litigation and diligently pursued an investigation of the Potential Ameristeel EPA Collective Action Members' claims against Ameristeel, including engaging in pre-mediation investigation, reviewing data and documents, and researching the applicable law, claims and potential defenses, conditional certification, potential relief, and the ascertainability of the Potential Ameristeel EPA Collective Action Members. Thereafter, the Parties engaged in extensive negotiations regarding possible resolution, which included an all-day, private mediation session with respected employment law mediator

Dina Jansenson, Esq. During the mediation process, the Parties exchanged detailed mediation statements on the claims, defenses, and potential damages. On October 10, 2023, through mediation, the Parties reached agreement regarding the general terms of the Settlement, which were memorialized in a Memorandum of Understanding. The aforementioned discovery and information, plus numerous phone calls and emails between counsel for the Parties prior to and after mediation, informed the mediation session and the Parties negotiations and ultimately led to an informed Settlement.

19.    Between October 2023 and early-December 2023, the Parties exchanged long-form settlement agreement drafts, developed an Opt-In process and an Opt-In Form, and a proposed Notice of Collective Action Settlement. The Parties ultimately negotiated a long-form Settlement Agreement (i.e., the Settlement), which was fully executed by the Parties on December 28, 2023. During this process, all negotiations were conducted on an arm's-length basis. Plaintiffs' counsel also corroborated that Ameristeel changed its parental leave policy beginning January 1, 2023 to remove gender as a condition of being allowed to take paid parental leave following the birth of a child, that it notified employees of the policy change (via internal emails and other methods) and also provided employees with a one-year "look back" period which allowed employees who had children in 2022 to take paid parental leave in 2023, so all Potential Ameristeel EPA Collective Action Members who had children born in 2022 were either able to take the paid parental leave made available to them or chose not to. On January 24, 2024, Defendants' counsel informed Plaintiffs' counsel that Macsteel had inadvertently excluded approximately 74 potential class members from the mailing list in the prior filed *Johnson* action. In an effort to conserve the Court's and the parties' resources and expedite notice to these 74 individuals, the Parties subsequently agreed to add the potential claims of these 74 individuals to this Litigation as subclass members

("Potential Macsteel EPA Collective Action Members") while making them eligible for Individual Settlement Payments equal to those in the *Johnson* action should they opt-in to this action, and if so, making them subject to the same release of claims as the participating class members in the *Johnson* action. All Potential Macsteel EPA Collective Action Members will receive notice of this settlement and be afforded an opportunity to participate should they meet the collective action definition for the Macsteel Collective Action. All Participating Macsteel EPA Collective Action Opt-in Members will receive $6,000 (one-half as wages and one-half as non-wages) and an amount for attorneys' fees equal to one-third of such amount, i.e., $2,000. The Macsteel EPA Covered Period is August 30, 2019 to December 31, 2022. These terms were previously approved in the *Johnson* action.

## **THE SETTLEMENT**

20.      The Parties have agreed to settle this case for a "Gross Settlement Amount" that is presently unknown prior to the Notice process, but will consist of: the following payments by Defendants: (a) $6,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between April 21, 2020 through July 1, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (b) $6,000 Individual Settlement Payments to Participating Macsteel EPA Opt-In Members who fathered a baby born during the Macsteel EPA Covered Period between August 30, 2019 through December 31, 2022, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (c) $3,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between July 2, 2022 through

December 31, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (d) $1,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period, and who took parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (e) attorneys' fees equaling one third (1/3) of each Participating Ameristeel EPA Opt-In Members' Individual Settlement Payment and each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000; $1,000 per Individual Settlement Payment of $3,000; and $333.33 per Individual Settlement Payment of $1,000), which includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Litigation; (f) up to $15,000 for Plaintiffs' counsel's out-of-pocket litigation costs on top of and in addition to the Individual Settlement Payments (Plaintiffs will provide appropriate documentation of their out-of-pocket expenses to Defendant); (g) $10,000 each ($20,000 total) to the named Plaintiffs as consideration for their global general release of liability and waiver of claims on top of an in addition to the Individual Settlement Payments; and (h) all actual claims administration costs (estimated to be $50,000, plus or minus). The settlement amount represents excellent value given the risks of litigation, though the recovery could potentially be greater if Plaintiff won conditional certification, succeeded on all claims at trial, proved the collective action members' damages, and survived an appeal. Attached hereto as **Exhibit 1** is a true and correct

copy of the Settlement.

21.    Each Participating Ameristeel EPA Opt-In Member (i.e., all Potential Ameristeel EPA Collective Action Members who submit a timely and valid Opt-In Form along with Proof of Paternity) will receive an Individual Settlement Payment of $6,000, $3,000, or $1,000, as described in paragraph 20, *supra*. This is a significant recovery—and supports that the Settlement is fair to the unnamed collective members—especially considering each Potential Ameristeel EPA Collective Action Members' possible recovery through this action consists of wages owed for six-weeks of unpaid parental leave time. By way of example, if a Potential Ameristeel EPA Collective Action Member fathered a baby born on July 1, 2022, and he did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, that individual would be compensated at a rate of $1,000 per week for every week that could have been owed for paid parental leave time, (i.e., $6,000 total), which also assumes that individual would take the full six-weeks of paid parental leave time had it been available to them. My co-counsel and I reviewed Plaintiffs' personnel files and determined that the combined average weekly wage of Plaintiffs, assuming 40-hour work weeks, equals approximately $700 (since Plaintiff Phillips was paid $18.96 per hour, and Plaintiff Juarez was paid $16.00 per hour), meaning six weeks of paid paternity leave back wages would equal $4,200 based on that combined average.

22.    The Settlement includes important non-monetary relief—having removed gender as a condition of being allowed to take paid parental leave following the birth of a child—that will benefit numerous Ameristeel employees (and their families).

23.    The named Plaintiffs fully support the Settlement. Based on communications with Plaintiffs, my colleagues and I are confident the proposed Settlement directly addresses their concerns with Ameristeel's paid parental leave policy and that the Potential Ameristeel EPA

15

Collective Action Members will respond favorably.

24.     While the exact size of the collective is presently unknown prior to the Notice process, Ameristeel has represented that of December 31, 2022, there were approximately 4,052 current and former male Gerdau Ameristeel US, Inc. employees in a non-union position, in addition to the 74 Potential Macsteel EPA Collective Action Members who will receive a Notice and an opportunity to opt-in to this Settlement. Further, in advance of mediation and as part of informal discovery, Plaintiffs' counsel reviewed data showing at least 133 non-union male employees of Ameristeel were allegedly denied paid baby bonding time following the birth of their child within the Ameristeel EPA Covered Period.

25.     The Parties agree and propose that the Court appoint CPT Group, Inc. as the Claims Administrator. CPT Group, Inc. is experienced in claims administration, having administered thousands of class action settlements (see https://www.cptgroup.com/about-us/).

26.     Attached hereto as **Exhibit 2** is a table summarizing the time expended by Ackermann & Tilajef, P.C. on this matter, including the time each timekeeper at our firm expended on this matter at their respective hourly billing rates, which have been used and approved in other wage-and-hour class or collective actions. As of April 9, 2024, Ackermann & Tilajef, P.C. has a total lodestar of $154,802.05 on this matter, consisting of 223.85 hours expended. Further, attached hereto as **Exhibit 3** is a table summarizing Ackermann & Tilajef, P.C.'s litigation costs in this matter, which equals $3,124.41. On or about April 9, 2024, Plaintiffs' counsel Matthew Clark informed me and co-counsel that he has expended 62.0 hours on this matter for a total lodestar of approximately $48,174.00 (i.e., 62.0 hours x $777 billing rate), and that he has incurred $2,750.68 in litigation costs. On or about April 9, 2024, Plaintiffs' counsel Cheryl Legare informed me and co-counsel that she has expended 12.6 hours on this matter for a total lodestar

of approximately $6,137.46 (i.e., 12.6 hours x $487.10 billing rate), and that she has incurred $100.00 in litigation costs.

I declare under penalty of perjury under the laws of the United States and the State of Texas that the foregoing is true and correct. Executed on April 12, 2024 in Beverly Hills, California.

Craig J. Ackermann

17

# EXHIBIT 1

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

## AMENDED SETTLEMENT AGREEMENT

Subject to the approval of the U.S. District Court for the Northern District of Texas, Plaintiffs Adrian Juarez Ortiz and William Phillips, individually and on behalf of all Potential EPA Collective Action Members, as defined herein, and Defendant Gerdau Ameristeel US, Inc. ("Ameristeel") and Gerdau Macsteel, Inc. (Macsteel") (together, "Defendant"), as defined herein, (collectively, the "Parties"), agree to the terms of this Stipulation and Agreement of Settlement (the "Agreement").

## I.     DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below. To the extent terms or phrases used in this Agreement are not specifically defined below, but are defined elsewhere in this Agreement, they are incorporated by reference into this definition section.

1.     "Approval Order" shall mean the order granting approval of the collective action settlement entered by the Court.

2.     "Check Cashing Period" shall mean the 180-day period commencing the date on which Individual Settlement Payments are mailed to the Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members. After the 180-day Check Cashing Period, any uncashed proceeds shall be dispersed as set forth in Section III, paragraph 39, below.

3.     "Claims Administrator" shall mean the Claims Administrator that the Parties select to perform the duties set forth in this Settlement, subject to the Court's approval. The Parties agree to solicit capped bids for claims administration services, and Defendant retains approval rights over the selection of the Claims Administrator. As part of the opt-in notice process, the Claims Administrator shall mail and then send Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members, excluding those Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

Action Members who have released claims against Defendant by any separate and unrelated agreements, a notice and Opt-In Form and two reminder postcards (i.e., three total mailings). The notice shall provide all Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members with notice of the Settlement, its terms and their right to submit an Opt-In Form along with valid Proof of Paternity during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, depending on which is applicable, and the scope of the claims being released if they opt-in to receive an Individual Settlement Payment. The Claims Administrator's duties also include, but are not limited to: establishing a Qualified Settlement Fund ("QSF"); calculating amounts owed to each Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In Member, including all applicable tax withholdings; issuing payments to all Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members and $10,000 payments to each of the Named Plaintiffs ($20,000 total) as consideration for their global general release of liability and waiver of claims; answering questions presented by Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members; issuing payment of all amounts required under this Agreement and Court Orders; determining the amount of payroll taxes owed by Defendant; issuing all required tax documents to Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members, Plaintiffs' counsel, and Defendant; paying all required taxes (including employee and employer taxes); issuing payment to *cy pres* recipient(s), if any; conducting skip traces; apprising Defendant of the amount of employer taxes owed; and taking any other action required by the Settlement and/or this Agreement and/or any Court orders. The Settlement Administrator will resolve any disputes raised by Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members concerning their claims as set forth in this Settlement Agreement.

4.     "Court" shall mean the U.S. District Court for the Northern District of Texas.

5.     "Defendant," or the "Company" shall mean Gerdau Ameristeel US, Inc. and

Page **2** of **30**

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

020

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

Gerdau Macsteel, Inc., and their past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

6.      "Effective Date," "Settlement Effective Date," or the date the Settlement shall become "Final," shall mean:

(i)      in the event that the Settlement has received Approval Order by the Court, then upon the passage of the applicable date for any interested party to seek appellate review of the Court's Approval Order of the Settlement without a timely appeal being filed; or

(ii)     in the event that a timely appeal of the Court's Approval Order has been filed, then the Settlement Agreement shall be final when the applicable appellate court has rendered a final decision or opinion affirming the Court's approval without material modification, and the applicable date for seeking further appellate review has passed. In the event that the Court fails to approve the Settlement, or if the appropriate appellate court fails to approve the Settlement or if this Agreement is otherwise terminated: (1) this  Agreement shall have no force and effect and the parties shall be restored to their respective positions prior to entering into it, and no Party shall be bound by any of the terms of the Agreement; (2) Defendant shall have no obligation to make any payments to the Participating Ameristeel EPA Opt-In Members, Participating Macsteel EPA Opt-In Members, Plaintiffs, or Plaintiffs' counsel; and (3) any approval order or judgment, shall be vacated.

7.      "Ameristeel EPA Covered Period" shall mean the period from April 21, 2020

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

through December 31, 2022.

8.      "Macsteel EPA Covered Period" shall mean the period from August 30, 2019 through December 31, 2022.

9.      "Gross Settlement Amount" shall mean the all-inclusive maximum settlement amount that Defendant shall be obligated to pay in connection with the Settlement. The Gross Settlement Amount is presently unknown, but will consist of:

(a) all $6,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between April 21, 2020 through July 1, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment;

(b) all $6,000 Individual Settlement Payments to Participating Macsteel EPA Opt-In Members who fathered a baby born during the Macsteel EPA Covered Period between August 30, 2019 through December 31, 2022, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment;

(c) all $3,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between July 2, 2022 through December 31, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment;

(d) all $1,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period, and who took parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment;

(e) attorneys' fees equaling one third (1/3) of each Participating Ameristeel EPA

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**022**

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

Opt-In Members' and each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000; $1,000 per Individual Settlement Payment of $3,000; and $333.33 per Individual Settlement Payment of $1,000), which includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Litigation;

(f) up to $15,000 for Plaintiffs' Counsel's out-of-pocket litigation costs on top of and in addition to the Individual Settlement Payments (Plaintiffs will provide appropriate documentation of their out-of-pocket expenses to Defendant);

(g) $10,000 each ($20,000 total) to the named Plaintiffs as consideration for their global general release of liability and waiver of claims on top of an in addition to the Individual Settlement Payments; and

(h) Defendant will pay all actual claims administration costs (estimated to be $50,000, plus or minus) to the Claims Administrator on top of and in addition to the Individual Settlement Payments.

10.      "Individual Settlement Payment" shall mean each Participating Ameristeel EPA Opt-In Member's and each Participating Macsteel EPA Opt-In Member's payment of either $6,000, $3,000, or $1,000 on a gross basis (as described in paragraph 9(a)-(d), herein), which shall be allowed as follows: 50% of each Individual Settlement Payment is reportable as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be issued to each Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In Member (Defendant shall pay its employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Payment); and 50% of each Individual Settlement Payment is reportable as 1099 income for which an IRS Form 1099 will be issued to each Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

Member.

11.    "Litigation" shall mean the civil action to be filed, subsequent to the execution of this Agreement, in the U.S. District Court for the Northern District of Texas, regarding Plaintiffs' allegations/assertions, intentions to allege/assert, and/or maintain individual and/or collective action claims for gender-based discrimination in violation of the Federal Equal Pay Act ("EPA") pursuant to 29 U.S.C. § 206(d) and 29 U.S.C. § 216(b), which shall be titled *Adrian Juarez Ortiz, et al., on behalf of himself and all others similarly situated v. Gerdau Ameristeel US, Inc. and Gerdau Macsteel, Inc.*

12.    "Notice(s)" shall mean the two agreed upon Notices of Settlement—the Ameristeel Notice of Collective Action Settlement, attached hereto as **Exhibit A**, and the Macsteel Notice of Action Settlement, attached hereto as **Exhibit C**. These are the Notices, approved by the Parties and subject to Court approval, which explain the terms of the Settlement and which the Claims Administrator shall mail to each male who was employed by Defendant in a non-union position during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable, either a Ameristeel Notice of the Collective Action Settlement or, Macsteel Notice of Collective  Action Settlement, as applicable.

13.    "Opt-In Deadline" shall mean the date by which Opt-In Forms, along with Proof of Paternity (as defined herein), must be postmarked and/or received by the Claims Administrator. The Parties agree to request that the Court set the Opt-In Deadline sixty (60) calendar days after the initial mailing of the Opt-In Forms.

14.    "Opt-In Form," shall mean the document Potential EPA Collective Action Members shall receive through the notice process, in substantially the form as **Exhibits B and D**, attached hereto. It is the Opt-In Form, approved by the Parties and subject to Court approval, which the Claims Administrator will mail to each male who was employed by Defendant in a non-union position during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable, explaining how they can determine if they are a Potential Ameristeel EPA

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**024**

Collective Action Member (as defined herein) or Potential Macsteel EPA Collective Action Member (as defined herein) and therefore claim their Individual Settlement Payment.

15.    "Participating Ameristeel EPA Opt-In Members" shall mean all Potential Ameristeel EPA Collective Action Members who submit a timely and valid Opt-In Form along with Proof of Paternity.

16.    "Participating Macsteel EPA Opt-In Members" shall mean all Potential Macsteel Collective Members who submit a timely and valid Opt-In Form along with Proof of Paternity.

17.    "Parties" shall mean Potential Ameristeel EPA Collective Action Members, Potential Macsteel EPA Collective Action Members, the Named Plaintiffs, and Defendant, and "Party" shall mean any one of the Parties.

18.    "Plaintiffs" and "Named Plaintiffs" shall mean Adrian Juarez Ortiz and William Phillips, the individuals to be identified as the named Plaintiffs in the Complaint, to be filed pursuant to this Agreement.

19.    "Plaintiffs' Counsel" shall mean Craig Ackermann and Brian Denlinger of Ackermann & Tilajef, P.C., Matthew Clark of Gregory, Moore, Brooks & Clark, P.C., and Cheryl Legare of Legare, Attwood & Wolfe, LLC.

20.    "Potential Ameristeel EPA Collective Action Member" shall mean all males who fathered a baby through natural birth (i.e., not adoption or placement through foster care) at any time during the Ameristeel EPA Covered Period while they were employed by Gerdau Ameristeel US, Inc. in a non-union position in the United States. As of December 31, 2022, Defendant represents there were approximately 4,052 current and former male Gerdau Ameristeel US, Inc. employees in a non-union position. The Parties agree to exclude from notice all Potential Ameristeel EPA Collective Action Members who have released their claims against Ameristeel by any separate and unrelated agreements.

21.    "Potential Macsteel EPA Collective Action Member" shall mean all males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

between August 30, 2019 through December 31, 2022 while they were employed by Gerdau Macsteel, Inc. in a non-union position and did not received notice in *Johnson v. Gerdau Macsteel, Inc.*, Case No. 23-CV-10719-BAF-CI (the "*Johnson* action"), which alleged similar claims to the immediate case. As of January 25, 2024, Defendant represents there are approximately 74 Potential Macsteel EPA Collective Action Members. The Parties agree to exclude from notice all Potential Macsteel EPA Collective Action Members who have released their claims against Macsteel by any separate and unrelated agreements.

22.    "Proof of Paternity" shall mean proof that a Potential Ameristeel EPA Collective Action Member or a Potential Macsteel EPA Collective Action Member had a baby during the Ameristeel EPA Covered Period or  Macsteel EPA Covered Period. Proof of paternity may be provided through a child's birth certificate, the addition of a newborn to their Ameristeel or Macsteel provided health insurance plan or the health insurance plan of their spouse during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable, or through other reasonable evidence which Plaintiffs and Defendant agree to jointly evaluate on a good faith basis. If a Potential Ameristeel EPA Collective Action Member or Potential Macsteel EPA Collective Action Member submits an Opt-In Form without Proof of Paternity, the Claims Administrator shall use its best efforts to contact the Potential Ameristeel EPA Collective Action Member or Potential Macsteel EPA Collective Action Member and request Proof of Paternity.

23.    "Settlement" shall mean this settlement agreement between the Parties, which, with Court approval, is intended to provide the terms relevant to the resolution of the Litigation with regard to all Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members.

## II.    **RECITALS**

24.    On June 7, 2023, Plaintiffs—intending to allege individual and nationwide collective action claims for gender-based discrimination in violation of the EPA—entered into a

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**026**

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

Tolling Agreement with Ameristeel to toll their gender-based discrimination claims under the EPA and the EPA claims of the Potential Ameristeel EPA Collective Action Members.

25.     As part of this Agreement, Plaintiffs shall file an EPA collective action complaint in the U.S. District Court for the Northern District of Texas, pursuant to 29 U.S.C. § 206(d) and 29 U.S.C. § 216(b) (the "Complaint"), alleging the following causes of action: collective claims for gender-based discrimination in violation of the Federal Equal Pay Act (29 U.S.C. § 206(d)).

26.     Defendant strongly denied liability for all of Plaintiffs' claims, and contended that it fully complied with federal and state law. There is, therefore, a *bona fide* dispute regarding whether or not additional wages are owed to the Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members.

27.     Soon after the Parties entered into the Tolling Agreement, the Parties, through their attorneys, engaged in informal settlement discussions regarding the matter. In September 2023, Ameristeel provided Plaintiffs with informal discovery documents and information, including a spreadsheet from Defendant's leave administrator showing non-union employees who requested FMLA leave during the Ameristeel EPA Covered Period for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Ameristeel's group health plan during the Ameristeel EPA Covered Period.

28.     Thereafter, the Parties engaged in extensive negotiations regarding possible resolution, which included an all-day, private mediation session with respected employment law mediator Dina Jansenson, Esq.  Specifically, on October 10, 2023, through mediation, the Parties reached agreement regarding the general terms of the Settlement, which were subsequently memorialized in this Agreement.

29.     On January 24, 2024, Defendant's counsel informed Plaintiffs' counsel that Macsteel Defendant had inadvertently excluded approximately 74 potential class members from the mailing list in a prior filed action against Gerdau Macsteel, Inc., *Johnson v. Gerdau*

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

*Macsteel, Inc.*, Case No. 23-CV-10719-BAF-CI (the "*Johnson* action"), which alleged similar claims to the immediate case. The Parties subsequently agreed to add these 74 individuals to this Litigation as Potential Macsteel EPA Collective Action Members, while making them eligible for Individual Settlement Payments equal to those in the *Johnson* action should they participate and if so, making them subject to the same release of claims as the participating class members in the *Johnson* action.

30.     Plaintiffs' Counsel represent that they have conducted a thorough investigation into the facts of this Litigation and have diligently pursued an investigation of the Potential Ameristeel EPA Collective Action Members' and Potential Macsteel EPA Collective Action Members' claims against Ameristeel and Macsteel, including engaging in pre-mediation investigation, reviewing data and documents, and researching the applicable law and potential defenses. Based on their own independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement is fair, reasonable and adequate and is in the best interests of Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members in light of all known facts and circumstances, including the risk of protracted litigation and Defendant's defenses and potential appellate issues.

31.     Ameristeel and Macsteel agree that the Settlement is fair, reasonable, and adequate under the circumstances, taking into account litigation risks and costs of defense.

32.     This Settlement represents a compromise of materially disputed claims. Nothing in this Settlement is intended or will be construed as an admission by Ameristeel or Macsteel that Plaintiffs' claims, to be set forth in the Litigation, have merit or that Defendant has any liability to Plaintiffs or the Potential Ameristeel EPA Collective Action Members or Potential Macsteel EPA Collective Action Members on those claims.

33.     The entry of an Approval Order in this action shall bind all Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members to the Released Ameristeel Claims or Released Macsteel Claims, as described below and as applicable,

Page **10** of **30**

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

028

and will also state that the Court retains jurisdiction to enforce the terms of the Settlement.

## III.    COLLECTIVE SETTLEMENT CONSIDERATION AND ALLOCATION

34.    The Parties agree to seek approval of this collective action Settlement using a one-step settlement approval process wherein the collective action will be certified for settlement purposes only and notices will be issued. After the notice period, the Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members will receive the benefits set forth herein, and the Parties need not seek final approval of the settlement.

35.    Gross Settlement Amount:  The amount of the Gross Settlement Amount under this Settlement, as defined above, is currently unknown and is dependent on the total number of Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members.

36.    Plaintiffs' Counsel's Attorneys' Fees and Costs: Defendant will not oppose Plaintiffs' Counsel's request to the Court for approval of a total for attorneys' fees in an amount that does not exceed attorneys' fees equaling 1/3rd of each Participating Ameristeel EPA Opt-In Members' and each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment, which shall be paid by Ameristeel or Macsteel, as applicable, on top of and in addition to each Individual Settlement Payment (i.e., payment of attorneys' fees of $2,000 per Individual Settlement Payment of $6,000, etc.). Subject to approval by the Court, Ameristeel shall also pay and will not object to reimbursement of Plaintiffs' Counsel's out-of-pocket costs up to $15,000 on top of and in addition to the Individual Settlement Payments. Plaintiffs will provide appropriate documentation of their out-of-pocket expenses to Ameristeel. Subject to their right to appeal any reduction in the requested attorneys' fee and litigation costs award by the Court, as provided in paragraphs 78 and 86 herein, Plaintiffs' Counsel agrees to accept any amount awarded by the Court and that such amount fully compensates them for all attorneys' fees and costs. The Claims Administrator will issue to Plaintiffs' Counsel a Form 1099 with respect to

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

their awarded fees and expenses.

37.    <u>Plaintiffs' General Release Payments</u>: Defendant will not oppose Plaintiffs' application to the Court for payments of $10,000 each ($20,000 total) to the Named Plaintiffs as consideration for their global general release of liability and waiver of claims on top of and in addition to the Individual Settlement Payments. The Claims Administrator will issue to the Named Plaintiffs Forms 1099 with respect to their $10,000 general release payments. Subject to their right to appeal any reduction in the requested $10,000 general release payment amounts by the Court, as provided in paragraphs 78 and 86 herein, the outcome of the Court's ruling on an application for the $10,000 general release payments shall not be grounds to terminate the Agreement or otherwise affect the approval of the Settlement.

38.    <u>Claims Administrator Payment</u>:  Defendant shall pay all of the actual costs of the Claims Administrator to fully administer this Settlement on top of and in addition to the Individual Settlement Payments.

39.    <u>Opt-In Process</u>: All males who were employed by Ameristeel or Macsteel in a non-union position during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable, shall receive notice of the Settlement Agreement, and all those Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members who submit a timely and valid Opt-In Form with Proof of Paternity (i.e., the Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members) will release Defendant from any and all liability for all claims and causes of action falling within the definition of Released Ameristeel Claims and Released Macsteel Claims, as set forth in paragraphs 61 and 62, respectively. All Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members will receive a check pursuant to this Settlement as set forth in paragraph 40. If any Participating EPA Opt-In Members  do not cash their checks within the 180-day Check Cashing Period, any funds associated with such uncashed checks from Participating Ameristeel EPA Opt-In Members or Participating Macsteel EPA Opt-In Members

Page **12** of **30**
AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

030

shall be distributed pursuant to a *cy pres* as agreed upon by the Parties, subject to approval by the Court.

40.    <u>Distribution to Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members</u>:  The Parties agree that the settlement funds will be placed in an account held by the Claims Administrator to effectuate the terms of the Settlement and the orders of the Court. The Claims Administrator shall be responsible for establishing, administering, and otherwise operating the settlement fund, including the preparation and filing of federal, state, and/or local tax returns. The Claims Administrator shall also be responsible for administering the settlement distribution process, as follows:

(a)    Every Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In Member will be entitled to his Individual Settlement Payment. Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members will receive two checks as set forth under the terms of this Settlement. One check shall be in the amount of 50% of the Individual Settlement Payment, and shall be reported as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be issued to each Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In Member (Defendant shall pay its employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Agreement). The second check shall be in the amount of 50% of the Individual Settlement Payment, and shall be reported as 1099 income for which an IRS Form 1099 will be issued to each Participating Ameristeel EPA Opt-In Member and Participating Macsteel EPA Opt-In Member. Neither counsel for Plaintiffs nor Defendant are offering nor will offer any tax advice to Participating Ameristeel EPA Opt-In Members or Participating Macsteel EPA Opt-In Members.

(b)    The Claims Administrator shall distribute all Individual Settlement Payments via U.S. Mail to all Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members from the office of the Claims Administrator. The Claims Administrator shall

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**031**

also mail the Court-approved attorneys' fees and costs to Plaintiffs' Counsel, and the Court-approved general release payments to Plaintiffs. The Claims Administrator shall retain the agreed-upon payment for its services as the Claims Administrator.

41.     Tax Treatment and Payment:  Prior to final distribution, the Claims Administrator shall calculate the total employees' taxes due as a result of the employee-side wage portion of Individual Settlement Payments, and such actual amount will be deducted from each Individual Settlement Payment. Defendant shall pay the employer-side wage portion of Individual Settlement Payments on top of and in addition to the Individual Settlement Payment. The Claims Administrator shall calculate the total employer's taxes due on the wage portion of the Individual Settlement Payments and issue instructions to Defendant to separately fund these tax obligations/withholdings. The Parties understand that Plaintiffs and the Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members who receive any payment pursuant to this Agreement shall be solely responsible for any and all other individual tax obligations associated with this Settlement and shall hold Defendant harmless from any and all liability with regard thereto.

42.     No Effect on Employee Benefit Plans: Neither the Settlement nor any amounts paid under the Settlement will modify any previously credited hours, days, or weeks of service under any employee benefit plan, policy or bonus program sponsored by Defendant. Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under Defendant's sponsored benefit plans, policies or bonus programs. The payments made under the terms of this Agreement shall not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of any of Defendant's benefit plan, policy or bonus program. Defendant does not consider the Settlement payments "compensation" for purposes of determining eligibility for, or benefit accrual within, any benefit plans, policies, or bonus programs, or any other plan sponsored by Defendant.

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

43.     <u>Establishment of Qualified Settlement Fund ("QSF")</u>: the Claims Administrator shall establish a QSF.  The Claims Administrator will have sole control of the QSF.  Any funds paid by Defendant pursuant to the terms of this Settlement will be paid to the QSF.

44.     <u>Settlement Funding and Settlement Payment Date</u>:  Within fifteen (15) calendar days after the Parties' counsel's receipt of the Final Notice Report from the Claims Administrator, as provided in paragraph 49, Defendant shall fund the settlement by paying into the QSF the Gross Settlement Amount. Within thirty (30) calendar days after the Defendant funds the settlement by paying into the QSF the Gross Settlement Amount, the Claims Administrator shall mail the Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members; pay the appropriate taxes to the appropriate taxing authorities; make payment of Court-approved attorneys' fees and costs to Plaintiffs' Counsel; and make payment of the Plaintiffs' Court-approved general release payments ("Settlement Payment Date").

## IV.     NOTICE TO THE POTENTIAL AMERISTEEL EPA COLLECTIVE ACTION MEMBERS AND POTENTIAL MACSTEEL EPA COLLECTIVE ACTION MEMBERS AND CLAIMS ADMINISTRATION PROCESS

45.     Within fifteen (15) calendar days after the Effective Date, Defendant shall provide the Claims Administrator with (a) the names, last known addresses, phone numbers, Social Security numbers, and dates of employment of all males who were employed by Ameristeel in a non-union position during the Ameristeel EPA Covered Period and (b) the names, last known addresses, email addresses, phone numbers, Social Security numbers, and dates of employment of all Potential Macsteel EPA Collective Action Members.

46.     Within thirty (30) calendar days after the Effective Date, the Notices, Opt-In Form, substantially in the forms of **Exhibits A** through **D**, attached  hereto, or as otherwise approved by the Court, shall be sent by the Claims Administrator to (a) all males who were employed by Ameristeel in a non-union position during the Ameristeel EPA Covered Period,

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**033**

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

excluding those Potential Ameristeel EPA Collective Action Members who have released claims against Defendant by any separate and unrelated agreements (who shall receive **Exhibits A** and **B**), by U.S. first-class mail, and (b) all Potential Macsteel EPA Collective Action Members (who shall receive **Exhibits C** and **D**), by first-class mail. The Claims Administrator shall also mail two separate reminder postcards—substantially in the form of **Exhibit E** attached hereto—to all males who were employed by Ameristeel or Macsteel in a non-union position during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable. The first reminder postcard shall be mailed by the Claims Administrator twenty (20) calendar days after the initial mailing of the Notice and Opt-In Form, and the second reminder postcard shall be mailed by the Claims Administrator forty (40) calendar days after the initial mailing of the Notice and Opt-In Form.  The reminder postcards shall be mailed by U.S. first-class mail.

47.    The Claims Administrator will use reasonable tracing to verify the accuracy of the addresses before the initial mailing to ensure that the Notices are sent to (a) all males who were employed by Ameristeel in a non-union position during the Ameristeel EPA Covered Period, and (b) all Potential Macsteel EPA Collective Action Members, at the addresses most likely to result in prompt receipt.  It will be conclusively presumed that if an envelope so mailed has not been returned within thirty (30) calendar days of the mailing, the individual received the Notice.  With respect to envelopes returned as undeliverable, the Claims Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address.

48.    The Claims Administrator will be responsible for mailing the (a) Ameristeel Notice of Collective Action Settlement and Opt-In Form to all males who were employed by Defendant in a non-union position during the EPA Covered Period, and (b) Macsteel Notice of Collective Action Settlement and Opt-In Form, for handling inquiries from Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members concerning the respective Notices, for determination—in conjunction with Plaintiffs' Counsel and Defendant's counsel—of whether Potential Ameristeel EPA Collective Action Members and

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

Potential Macsteel EPA Collective Action Members submitted valid Proof of Paternity, for maintaining the settlement funds in an appropriate interest bearing account, for preparing, administrating and distributing Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members, and for issuing a final report and performing such other duties as the Parties may direct.

49.     On a weekly basis, the Claims Administrator will provide reports to Plaintiffs' Counsel and Defendant's Counsel updating them as to the number of valid and timely Opt-In Forms and Proof of Paternity for Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members, and any issues related to Proof of Paternity from Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members. The Claims Administrator will email to Plaintiffs' Counsel and Defendant's Counsel date-stamped copies of the original Opt-In Forms no later than seven (7) calendar days after their receipt. The Claims Administrator will provide Plaintiffs' Counsel and Defendant's counsel with proof of mailing of the Notices. No later than seven (7) calendar days after the Opt-In Deadline, the Claims Administrator will compile and deliver to Plaintiffs' Counsel and Defendant's Counsel a Report ("Final Notice Report") with summary information regarding (a) the total number of Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members and the total amount of final Individual Settlement Payments of Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members; and (b) the number of invalid Opt-In Forms and/or Proof of Paternity.

50.     Within fifteen (15) calendar days after the Opt-In Deadline, the Claims Administrator shall provide Plaintiffs' Counsel and Defendant's Counsel with a Declaration of Due Diligence and Proof of Mailing with regard to the mailing of the Notice and its attempts to locate Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members. The Declaration shall specify the number of individuals to whom Notices were sent and the number of individuals to whom Notices were not delivered, as well as

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

information relating to the number of valid Opt-Ins and associated Individual Settlement Payment amounts. Upon request of the Court, Plaintiffs' Counsel shall file this Declaration with the Court.

51.    The Ameristeel Notice of Collective Action Settlement and Opt-In Form shall provide all males who were employed by Ameristeel in a non-union position during the Ameristeel EPA Covered Period, with notice of the Settlement, its terms and their right to submit an Opt-In Form along with valid Proof of Paternity during the Ameristeel EPA Covered Period, and the scope of the claims being released if they opt-in to receive the Individual Settlement Payment. The Ameristeel Notice and Opt-In Form will explain that the Potential Ameristeel EPA Collective Action Members who wish to receive any portion of the Settlement must submit a timely and valid Opt-In Form with Proof of Paternity (i.e. Participating Ameristeel EPA Opt-In Members). Only those who submit a timely and valid Opt-In Form with Proof of Paternity can receive an Individual Settlement Payment. Each Participating Ameristeel EPA Opt-In Member will be bound for purposes of the Settlement in the Litigation by the releases set forth in this Settlement. Plaintiffs shall not be required to submit Opt-In Forms, but shall be included automatically as timely opt-ins.  Plaintiffs shall be required to timely submit a valid Proof of Paternity.

52.    The Macsteel Notice of Collective Action Settlement and Opt-In Form shall provide Potential Macsteel EPA Collective Action Members with notice of the Settlement, its terms and their right to submit an Opt-In Form along with valid Proof of Paternity during the Macsteel EPA Covered Period, and the scope of the claims being released if they opt-in to receive the Individual Settlement Payment. The Macsteel Notice and Opt-In Form will explain that the Potential Macsteel EPA Collective Action Members who wish to receive any portion of the Settlement must submit a timely and valid Opt-In Form with Proof of Paternity (i.e. Participating Macsteel EPA Opt-In Members). Only those who submit a timely and valid Opt-In Form with Proof of Paternity can receive an Individual Settlement Payment. Each Participating

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**036**

Macsteel EPA Opt-In Member will be bound for purposes of the Settlement in the Litigation by the releases set forth in this Settlement.

53.     <u>Opt-In Provisions</u>:  Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members shall have sixty (60) calendar days from the initial mailing of the Notice and Opt-In Form to opt-in to the Settlement by submitting their completed and signed Opt-In Form with Proof of Paternity to the Claims Administrator. The date by which Opt-In Forms with Proof of Paternity must be postmarked and/or received via email by the Claims Administrator shall be used for determining the Opt-In Deadline. The Opt-In Form with Proof of Paternity must be postmarked by the Opt-In Deadline if delivered to the Claims Administrator by postage pre-paid U.S. first-class mail. If delivered by means other than mail, including email, it must be received by the Claims Administrator on or before the Opt-In Deadline. Plaintiffs' Counsel and Defendant's Counsel may mutually agree, but need not, in their respective sole discretion, to accept late-filed Opt-In Forms with Proof of Paternity that are received after the Opt-In Deadline. Any Opt-In Form and Proof of Paternity (1) not postmarked by the Opt-In Deadline; or (2) not received by other means, including email, by the Claims Administrator by the Opt-In Deadline, is not considered a timely and valid Opt-In Form. Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members who fail to submit a timely and valid Opt-In Form with Proof of Paternity will receive no Individual Settlement Payment.

54.     <u>Opt-In Form Disputes</u>: If a Potential Ameristeel EPA Collective Action Member or Potential Macsteel EPA Collective Action Member disagrees with the Claims Administrator's determination of whether a timely and valid Opt-In Form with  Proof of Paternity was submitted—after consultation with Plaintiffs' Counsel and Defendant's counsel on a good faith basis—the Potential Ameristeel EPA Collective Action Member or Potential Macsteel EPA Collective Action Member may dispute such information by submitting to the Claims Administrator additional documents, information, and/or other evidence to prove that they

Page **19** of **30**
AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

037

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

fathered a baby born by natural birth during the Ameristeel EPA Covered Period or Macsteel EPA Covered Period, as applicable. The dispute will not be reviewed without documentary evidence to support the claim. The Claims Administrator will jointly work with the Parties to resolve the dispute in good faith. Plaintiffs' Counsel and Defendant's Counsel shall jointly and expeditiously consider the dispute and any relevant evidence. If the Parties cannot agree over whether a Potential Ameristeel EPA Collective Action Member or Potential Macsteel EPA Collective Action Member has submitted a valid Opt-In Form Proof of Paternity, after the Claims Administrator has made its final recommendation based on the evidence and information submitted, the Parties shall submit the unresolved dispute to the Court, and any determination by the Court is final and binding with no opportunity for further appeal.

55.    The Parties agree that the Tolling Agreement that was executed by the Parties' counsel on June 7, 2023, remaining in effect until December 3, 2023, and any extensions thereto, shall be void *ab initio*, as if it never occurred, at the time of the expiration of the Opt-In Deadline.

56.    The Claims Administrator shall provide updates to Plaintiffs' Counsel and Defendant's Counsel every week of the (1) the number of undeliverable notices/forms; (2) the number and names of any Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members; (3) any disputes by Potential Amersiteel EPA Collective Action Members or Potential Macsteel EPA Collective Action Members; (4) Opt-In Forms and/or associated Proof of Paternity that do not comply with the process.

57.    The Claims Administrator shall be responsible for issuing and mailing the checks for the court-approved Individual Settlement Payments to the Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members, as well as applicable tax documents relating to such payments, e.g., forms W-2 and 1099.

58.    The Claims Administrator will submit to Plaintiffs' Counsel proof of all Individual Settlement Payments made, and will serve all counsel with a copy of the same, within

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

sixty (60) calendar days after the Settlement Payment Date.

59.    Participating Ameristeel EPA Opt-In Members and Participating Macsteel EPA Opt-In Members shall have a period of one hundred eighty (180) calendar days after the mailing by the Claims Administrator to cash or deposit their Individual Settlement Payment checks. If a Participating Ameristeel EPA Opt-In Member or Participating Macsteel EPA Opt-In Member fails to cash or deposit his check within this Check Cashing Period, the Claims Administrator will cancel the check with 100% distributed to a *cy pres* pursuant to paragraph 39 herein.

## V.    <u>RELEASE OF CLAIMS</u>

60.    <u>General Release by Plaintiffs</u>:  In consideration of their awarded $10,000 general release payments, and the other terms and conditions of the Settlement, and understanding that there is a *bona fide* dispute regarding wages they may be owed, among other things, Plaintiffs each agree to execute separate settlement agreements, including a full general release of any claims he may have, whether known or unknown, without exception, except as may be prohibited by law, against Defendant, through and including the date the general release is signed. The general release of claims to be signed by Plaintiffs will include other standard non-monetary terms such as a neutral reference (i.e., if contacted by any prospective employer regarding Plaintiffs, Defendant shall only provide Plaintiffs' dates of employment and position held, and no other information), and non-disparagement provisions for the Participating EPA Opt-in Members.

61.    <u>Released Claims by Participating Ameristeel EPA Opt-In Members</u>:    In consideration of the terms and conditions of this Settlement and the Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members, and recognizing that there is a *bona fide* dispute regarding wages owed, among other things, each Participating Ameristeel EPA Opt-In Member (including the Named Plaintiffs) will irrevocably release and discharge Defendants Gerdau Ameristeel US, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors,

Page **21** of **30**
AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**039**

shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers from all claims and causes of action to be or that could be based upon the facts alleged in the Complaint, including claims for gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*); the Federal Equal Pay Act (29 U.S.C. § 206(d)); and any other applicable state, local, and/or federal laws based on the location of the Participating Ameristeel EPA Opt-In Member for alleged violations resulting from Ameristeel Defendant's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Ameristeel Claims"). The release period shall be identical to the Ameristeel EPA Covered Period. The Released Claims do not include any claims that the law does not permit each Participating Ameristeel EPA Opt-In Member to release.

62.  <u>Released Claims by Participating Macsteel EPA Opt-In Members</u>:  In consideration of the terms and conditions of this Settlement and the Individual Settlement Payments to Participating Macsteel EPA Opt-In Members, and recognizing that there is a *bona fide* dispute regarding wages owed, among other things, each Participating Macsteel EPA Opt-In Member will irrevocably release and discharge Defendants Gerdau Macsteel, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers from all claims and causes of action to be or that could be based upon the facts alleged in the Complaint, including claims for gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*); the Federal Equal Pay Act (29 U.S.C. § 206(d)); and any other applicable state, local, and/or federal laws based on the location of the Participating Macsteel

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**040**

EPA Opt-In Member for alleged violations resulting from Macsteel Defendant's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Macsteel Claims"). The release period shall be identical to the Macsteel EPA Covered Period. The Released Claims do not include any claims that the law does not permit each Participating Macsteel EPA Opt-In Member to release.

63. <u>Additional Attorneys' Fees Released by Plaintiffs' Counsel</u>:  In consideration for their Court-approved attorneys' fees and expenses, other than as set forth herein, Plaintiffs' Counsel waives any and all claims to any further attorneys' fees or costs in connection with the Litigation.

## VI.   <u>CONFIDENTIALITY</u>

64. Plaintiffs and Plaintiffs' Counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry, or have any communication with the press about the Litigation, or the fact, amount, or terms of the Settlement.

65. Plaintiffs and Plaintiffs' Counsel agree that they will not engage in any advertising or distribute any marketing materials relating to the Settlement that identifies Defendant, including but not limited to any postings on any websites maintained by Plaintiffs' Counsel. Notwithstanding the foregoing, Plaintiffs' Counsel shall be permitted to make reference to the Settlement in connection with submitting declarations concerning adequacy in other cases, and Plaintiffs' Counsel may identify the case and case number, provide a description of the case and resolution, and confirm the fact that they were approved as Plaintiffs' Counsel.

66. Any communication about the Settlement to Potential Ameristeel EPA Collective Action Members or Potential Macsteel EPA Collective Action Members by Plaintiffs' Counsel or Plaintiffs prior to the Court-approved mailing will be limited to a statement that a settlement

Page **23** of **30**
AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**041**

has been reached and the details will be communicated in a forthcoming Court-approved Notices.

67.    Defendant shall have the right to rescind this Settlement, rendering it null and void, if Plaintiffs or Plaintiffs' Counsel violate the obligations in this Section VI.

## VII.    DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

68.    <u>Cooperation</u>: The Parties and their counsel agree to cooperate and take all steps necessary and appropriate to obtain approval of this Settlement, to effectuate its terms, and to dismiss the Litigation with prejudice.  The Parties further agree that they nor their counsel will encourage or discourage Potential Ameristeel EPA Collective Action Members or Potential Macsteel EPA Collective Action Members to opt-in to the Settlement.

69.    <u>Policy Change</u>: Defendant modified the maternity leave policy at issue in this dispute (i.e., its policy allowing baby bonding time to female employees, but not to male employees), effective January 1, 2023, to remove gender as a condition of being allowed to take paid parental leave following the birth of a child. Defendant agrees that Plaintiffs may represent the same to the Court.

70.    <u>Fair, Reasonable and Adequate Settlement</u>:  The Parties agree that the Settlement is fair, reasonable and adequate and will so represent to the Court.

71.    <u>Unopposed Motion for Approval of Settlement</u>:  Plaintiffs' Counsel will move the Court for a one-stage Order Granting Approval of the Settlement, Notices, and Opt-In Forms substantially in the forms attached hereto as **Exhibits A-E**. Defendant agrees not to oppose Plaintiffs' Motion for Approval to the extent it comports with this Agreement, although Plaintiffs agree that Defendant may provide good faith redlines and comments for Plaintiffs' consideration, and Plaintiffs will negotiate over edits to the same in good faith:

(a)    Certifying the collective action for settlement purposes only;

(b)    Approving as to form, content and distribution the proposed Notices;

(c)    Directing the mailing of the Notices to (a) each Potential Ameristeel EPA

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**042**

DocuSign Envelope ID: F9F01421-FCE3-478F-9A4A-7BCFE95C3F81

Collection Action Member and (b) each Potential Macsteel EPA Collective Action Member;

(d)          Approving Craig Ackermann, Brian Denlinger, Matthew Clark, and Cheryl Legare and their respective law firms, as collective counsel;

(e)          Approving Plaintiffs' general release payments to the Named Plaintiffs;

(f)          Approving the payment of attorneys' fees and costs to Plaintiffs' Counsel;

(g)          Approving the Claims Administrator to be agreed to by the Parties as the Parties' mutually agreed upon Claims Administrator.

## VIII.   PARTIES' AUTHORITY

72.    The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## IX.    MUTUAL FULL COOPERATION

73.    The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Plaintiffs' Counsel shall, with the cooperation of Defendant and its counsel, take all steps necessary to secure the Court's Approval Order.

## X.    NO PRIOR ASSIGNMENTS

74.    The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Settlement.

## XI.    NO ADMISSION

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

75.     Nothing in this Settlement shall be construed as or deemed to be an admission by any Party of any liability, culpability, negligence, or wrongdoing toward any other Party, or any other person, and the Parties specifically disclaim any liability, culpability, negligence, or wrongdoing toward each other or any other person. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. Nothing herein shall constitute any admission by Defendant of wrongdoing or liability, or of the truth of any factual allegations in the Litigation. Nothing herein shall constitute any admission by Defendant regarding the merits of the claims in this Litigation. Nothing herein shall constitute an admission by Defendant that the Litigation was properly brought as a collective action other than for settlement purposes. To the contrary, Defendant has denied and continues to deny each and every material factual allegation and all claims. All Opt-In Forms submitted or other evidence produced or created by the Parties in connection with the opt-in procedure do not constitute, are not intended to constitute and will not be deemed to constitute, an admission by Defendant of any violation of any federal, state, or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.

## XII.   ENFORCEMENT ACTIONS

76.     In the event that one or more of the Parties institutes any legal action against any other party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful party or Parties shall be entitled to recover from the unsuccessful party or Parties reasonable attorneys' fees and costs, including expert witness fees and costs incurred in connection with any enforcement actions.

## XIII.  NOTICES

77.     Unless otherwise specifically provided, all notices, demands or other communications shall be in writing and shall be deemed to have been duly given as of the fifth (5th) business day after mailing by United States registered or certified mail, return receipt

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**044**

requested, addressed as follows:

> To Plaintiffs' Counsel:
> Craig Ackermann, Esq.
> Ackermann & Tilajef, P.C.
> 315 South Beverly Drive, Suite 504
> Beverly Hills, California 90212
> Email: cja@ackermanntilajef.com
>
> Brian Denlinger, Esq.
> Ackermann & Tilajef, P.C.
> 2602 North Proctor Street, #205
> Tacoma, Washington 98406
> Email: bd@ackermanntilajef.com
>
> Matthew Clark, Esq.
> Gregory, Moore, Brooks & Clark, P.C.
> 28 W. Adams Ave., Ste. 300
> Detroit, Michigan 48226
> Email: matt@unionlaw.net
>
> Cheryl Legare, Esq.
> Legare, Attwood & Wolfe, LLC
> 125 Clairemont Ave., Ste. 380
> Decatur, Georgia 30030
> Email: cblegare@law-llc.com
>
> To Defendant:
> Daniel Turner, Esq.
> Nichole Novosel, Esq.
> Littler Mendelson, P.C.
> 3424 Peachtree Road N.E.
> Atlanta, Georgia 30326

## XIV.  **VOIDING THE AGREEMENT**

78.    If this Settlement is not approved, or if the Court's Approval Order is materially modified on appeal, then this Settlement will become null and void, no payment under this Settlement will be made, and the Settlement shall not be used nor be admissible in any subsequent proceeding either in this Court or in any other Court or forum, nor shall there be any certification of the collective action, as it is being requested here solely for the purposes of this

Page **27** of **30**
AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

045

Settlement. If such occurs, the parties agree to a thirty-day period to attempt to resolve any issues or concerns raised by the Court. If the Parties cannot agree, the matter will be returned to its status prior to settlement discussions as if no settlement discussions occurred, *ab initio*. If there is any reduction in the requested attorneys' fee award, litigation costs, or the Plaintiffs' general release payments by the Court, such reduction may be appealed as set forth below but is not a basis for rendering the Settlement voidable and unenforceable.

## XV.    CONSTRUCTION

79.    The Parties agree that the terms and conditions of this Settlement are the result of intensive arm's-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Settlement.

## XVI.    CAPTIONS AND INTERPRETATIONS

80.    Paragraph titles or captions contained in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision. Each term of this Settlement is contractual and not merely a recital.

## XVII.    MODIFICATION

81.    This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court.

## XVIII.    INTEGRATION CLAUSE

82.    This Settlement contains the entire agreement between the Parties, and, once it is fully executed, all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, relating to the resolution of the Litigation, are merged in this Settlement. No rights under this Settlement may be waived except in writing signed by both Parties.

## XIX.    BINDING ON ASSIGNS

83.    This Settlement shall be binding upon and inure to the benefit of the Parties and

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**046**

their respective heirs, trustees, executors, administrators, successors and assigns. The Parties may execute this Settlement Agreement by means of electronic signatures (e.g. DocuSign, etc.).

## XX.    PLAINTIFFS' COUNSEL SIGNATORIES

84.    It is agreed that it is impossible or impractical to have each Potential Ameristeel EPA Collective Action Member and Potential Macsteel EPA Collective Action Members execute this Settlement. The Notices will advise all Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members of the binding nature of the release should they submit a timely and valid Opt-In Form with Proof of Paternity.

## XXI.    COUNTERPARTS

85.    This Settlement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

## XXII.    RIGHT OF APPEAL

86.    The Parties agree to waive all appeals from the Court's Approval Order of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiffs may appeal any reduction in the requested amount of attorneys' fees and/or costs, or any reduction in the requested amount of the Plaintiffs' general release payments, but any such appeal will not otherwise impact the Settlement or the Approval Order.

## XXIII.    COLLECTIVE ACTION CERTIFICATION

87.    The Parties agree that the stipulation of collective action certification is for the purposes of this Settlement only and if for any reason the Settlement is not approved, the Settlement will be of no force or effect, the collective action will not be certified and no payment will be made. The Parties agree that certification for settlement purposes is in no way an admission that collective action certification is proper and that evidence of this stipulation for settlement purposes only will not be deemed admissible in this or any other proceeding.

88.    <u>Parties' Duties After the Effective Date</u>:  The Parties agree that after the Effective

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

Date of the Settlement, they will cooperate and take any and all necessary actions to ensure the Settlement is implemented and all payments under the Settlement Agreement and any Court orders are made. Plaintiffs agree that within three hundred (300) calendar days of the Effective Date, they will destroy any confidential documents provided to them by Defendant concerning this matter.

## COUNSEL FOR THE PARTIES

                                    LITTLER MENDELSON, P.C.


DATED: March __4__, 2024            By: _____
                                        DANIEL TURNER, ESQ.
                                        NICHOLE NOVOSEL, ESQ.
                                        Attorneys for Defendant

                                    ACKERMANN & TILAJEF, P.C.


DATED: March ___, 2024              By: _____
                                        BRIAN DENLINGER, ESQ.
                                        CRAIG ACKERMANN, ESQ.
                                        Attorneys for Plaintiffs

                                    GREGORY, MOORE, BROOKS & CLARK, P.C.


DATED: March ___, 2024              By: _____
                                        MATTHEW CLARK, ESQ.
                                        Attorney for Plaintiffs

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**048**

Date of the Settlement, they will cooperate and take any and all necessary actions to ensure the Settlement is implemented and all payments under the Settlement Agreement and any Court orders are made. Plaintiffs agree that within three hundred (300) calendar days of the Effective Date, they will destroy any confidential documents provided to them by Defendant concerning this matter.

## COUNSEL FOR THE PARTIES

LITTLER MENDELSON, P.C.

DATED: March ___, 2024        By:_____
                              DANIEL TURNER, ESQ.
                              NICHOLE NOVOSEL, ESQ.
                              Attorneys for Defendant

                              ACKERMANN & TILAJEF, P.C.

DATED: March  4 , 2024        By: *Brian W. Denlinger* _____
                              BRIAN DENLINGER, ESQ.
                              CRAIG ACKERMANN, ESQ.
                              Attorneys for Plaintiffs

                              GREGORY, MOORE, BROOKS & CLARK, P.C.

DATED: March  4 , 2024        By: *Matthew Clark* _____
                              MATTHEW CLARK, ESQ.
                              Attorney for Plaintiffs

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

LEGARE, ATTWOOD & WOLFE, LLC

DATED:  March _7_, 2024    By: _____

CHERYL LEGARE, ESQ.
Attorney for Plaintiffs

**PARTIES**

DATED:  March _4_, 2024    By: _____

ADRIAN JUAREZ ORTIZ
PLAINTIFF

DATED:  March _6_, 2024    By: _____

WILLIAM PHILLIPS
PLAINTIFF

DATED:  March ___, 2024    By: _____

GERDAU AMERISTEEL US, INC.
DEFENDANT

DATED:  March ___, 2024    By: _____

GERDAU MACSTEEL, INC.
DEFENDANT

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**050**

LEGARE, ATTWOOD & WOLFE, LLC

DATED:  March __7__, 2024          By: _____
                                       CHERYL LEGARE, ESQ.
                                       Attorney for Plaintiffs

**PARTIES**

DATED:  March ___, 2024          By: _____
                                       ADRIAN JUAREZ ORTIZ
                                       PLAINTIFF

DATED:  March ___, 2024          By: _____
                                       WILLIAM PHILLIPS
                                       PLAINTIFF

DATED:  March _4_, 2024          By: _____
                                       GERDAU AMERISTEEL US, INC.
                                       DEFENDANT

DATED:  March _4_, 2024          By: _____
                                       GERDAU MACSTEEL, INC.
                                       DEFENDANT

AMENDED SETTLEMENT AGREEMENT
ORTIZ & PHILLIPS v. GERDAU AMERISTEEL US, INC.

**051**

# EXHIBIT 1A

EXHIBIT A

Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx

# NOTICE OF COLLECTIVE ACTION SETTLEMENT TO POTENTIAL AMERISTEEL EPA COLLECTIVE ACTION MEMBERS

**TO:  All males who fathered a baby through natural birth (i.e., not adoption or placement through foster care) at any time between April 21, 2020 and December 31, 2022 while they were employed by Gerdau Ameristeel US, Inc. in a non-union position ("Potential Ameristeel EPA Collective Action Members"):**

THIS NOTICE MAY AFFECT YOUR RIGHTS
PLEASE READ IT CAREFULLY

## I.    WHY SHOULD I READ THIS NOTICE?

The purpose of this Notice is to inform you of the potential resolution of a collective action lawsuit entitled "*Adrian Juarez Ortiz, et al., on behalf of himself and all others similarly situated v. Gerdau Ameristeel US, Inc. et al.*," Case No. _____, which is currently pending in the U.S. District Court for the Northern District of Texas (the "Litigation").

The Litigation alleges, in part, that Gerdau Ameristeel US, Inc. ("Ameristeel" or the "Company") violated federal and state law by discriminating against males on the basis of sex and/or gender through a parental leave policy which allowed females, but not males, to take six weeks of paid parental leave for baby bonding and/or dealing with baby medical matters between April 21, 2020 through December 31, 2022 (i.e., the "Ameristeel EPA Covered  Period"). The lawsuit contains a collective action claim for gender-based discrimination in violation of the Federal Equal Pay Act (29 U.S.C. § 206(d)).

The Company strongly denies liability for all of Plaintiff Adrian Juarez Ortiz and Plaintiff William Phillips' (together "Plaintiffs") claims, and contends that it fully complied with federal and state law during the Ameristeel EPA Covered Period. The Company further contended that Plaintiffs' claims cannot be maintained as an EPA collective action. There is, therefore, a *bona fide* dispute regarding whether or not additional wages are owed to the Ameristeel Potential EPA Collective Action Members.

On or around October 10, 2023, the parties reached a provisional settlement of the Ameristeel EPA Claims in this matter, which means the ultimate settlement ("Ameristeel EPA Collective Settlement") is subject to Court approval.  The Parties entered into a long form Settlement Agreement ("Agreement") on or around December 28, 2023. On [*insert date of settlement approval*], the Court issued an order approving the Ameristeel EPA Collective Settlement, certifying a collective action for settlement purposes, and directing the mailing of this Notice and Opt-In Form.  The Court has not expressed any opinion as to the validity of the claims raised in this case, and has not ruled on any of the causes of action prior to the Parties' agreement to settle.

To avoid additional expense, inconvenience, and risks of continued litigation, the Parties have concluded that it is in their respective best interests and the interests of the Potential Ameristeel

EXHIBIT A

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

EPA Collective Action Members to settle the Litigation on the terms summarized in this Notice. The Settlement was reached after arms-length, non-collusive negotiations between the Parties, including through an all-day, private mediation session, and the Parties have determined that the Settlement is a fair, reasonable, and adequate way to resolve the disputed claims.

**Your rights may be affected by this Litigation** because, according to the Company's records, you are a male who was employed by Gerdau Ameristeel US, Inc. in a non-union position during the "Ameristeel EPA Covered Period. The "Potential Ameristeel EPA Collective Action Members" under this Settlement include all males who fathered a baby born through natural birth (i.e., not adoption or placement through foster care) at any time during the Ameristeel EPA Covered Period while they were employed by Gerdau Ameristeel US, Inc. in a non-union position.

## II.    WHAT ARE THE TERMS OF THE SETTLEMENT?

The following are aspects of the Settlement preliminarily approved by the Court:

- The Gross Settlement Amount ("GSA") is the all-inclusive maximum settlement amount that Ameristeel shall be obligated to pay in connection with the Settlement. The GSA consists of:
  - All Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members (as defined herein):
    - $6,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the EPA Covered Period between April 21, 2020 through July 1, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side taxes associated with the W-2 portion of each such Individual Settlement Payment;
    - $3,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the EPA Covered Period between July 2, 2022 through December 31, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side taxes associated with the W-2 portion of each such Individual Settlement Payment;
    - $1,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the EPA Covered Period, and who took parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side taxes associated with the W-2 portion of each such Individual Settlement Payment;
  - attorneys' fees equaling one third (1/3) of each Participating Ameristeel EPA Opt-In Members' Individual Settlement Payment

Page **2** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

054

EXHIBIT A

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000; $1,000 per Individual Settlement Payment of $3,000; and $333.33 per Individual Settlement Payment of $1,000);

- o up to $15,000 for Plaintiffs' Counsel's out-of-pocket litigation costs;
- o $10,000 each ($20,000 total) to the named Plaintiffs as consideration for their global general release of liability and waiver of claims; and
- o all actual claims administration costs.

- The settlement shall be an "opt-in" collective action settlement, meaning that only Potential Ameristeel EPA Collective Action Members who submit a timely and valid Opt-In Form along with Proof of Paternity (as described herein) will become Participating Ameristeel EPA Opt-in Members and be entitled to an Individual Settlement Payment and shall release Ameristeel from any and all liability for claims arising directly or indirectly from facts alleged in the Litigation.  Please also see the attached Opt-In Form (**Exhibit B**) for further details.

- Proof of Paternity means proof that a Potential Ameristeel EPA Collective Action Member fathered a baby during the Ameristeel EPA Covered Period.  Proof of Paternity may be provided by submitting the following documentary evidence to the Claims Administrator along with an Opt-In Form: your child's birth certificate; the addition of a newborn to your Ameristeel-provided health insurance plan or the health insurance plan of your spouse during the Ameristeel EPA Covered Period; or through other reasonable evidence which the Parties agree to jointly evaluate on a good faith basis.

- Each Participating Ameristeel EPA Opt-In Member will be entitled to an amount as set forth above and will receive two checks. One check shall be in the amount of 50% of the Individual Settlement Payment and shall be reported as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be issued to each Participating Ameristeel EPA Opt-In Member. The second check shall be in the amount of 50% of the Individual Settlement Payment and shall be reported as 1099 income for which an IRS Form 1099 will be issued to each Participating Ameristeel EPA Opt-In Member.

- Any checks that are not negotiated within 180 days will result in the amount associated with those checks to be deemed void, and the funds associated with such unnegotiated checks from Participating Ameristeel EPA Opt-In Members shall be distributed pursuant to a *cy pres* to The Fatherhood Project.

- Every Participating Ameristeel EPA Opt-In Member will release Ameristeel from any and all liability for and for all claims and causes of action as set forth in Section III.A below. Participating Ameristeel EPA Opt-In Members shall bear sole responsibility for any and all tax liabilities, except that Ameristeel shall pay its portion of the employer-side payroll taxes in addition to the Individual Settlement Payments. Participating Ameristeel EPA Opt-In Members are encouraged to seek independent advice regarding the tax consequences of their settlement awards.

- No employee benefit shall increase or accrue as a result of any payment made in connection with this Settlement.

Page **3** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

055

**EXHIBIT A**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

III.    **WHAT IS THE EFFECT OF THE SETTLEMENT?**

A.    **Release of Claims.**

All Participating Ameristeel EPA Opt-In Members, understanding that there is a *bona fide* dispute regarding wages they may be owed, among other things, will irrevocably release and discharge Defendant Gerdau Ameristeel US, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers from all claims and causes of action to be or that could be based upon the facts alleged in the Litigation, including claims for gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*); the Federal Equal Pay Act (29 U.S.C. § 206(d)); as well as any other applicable state, local, and/or federal laws based on the location of the Participating Ameristeel EPA Opt-In Member based on alleged violations resulting from Ameristeel's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Ameristeel Claims"). The Release Period for the Released Ameristeel Claims shall be identical to the Ameristeel EPA Covered Period. The Released Ameristeel Claims do not include any claims that the law does not permit each Participating Ameristeel EPA Opt-In Member to release.

The release of claims recited in this paragraph shall not apply to Potential Ameristeel EPA Collective Action Members who do not submit an Opt-In Form.  If you do not timely submit an Opt-In Form with Proof of Paternity, you will not release any claims, and you will not receive any Individual Settlement Payment from this case.

Each Participating Ameristeel EPA Opt-In Member who receives a payment is responsible for appropriately reporting the proceeds received as a result of this Settlement on his taxes, and agrees to hold the Released Parties harmless with respect to any dispute arising from or related to such reporting.

B.    **Payment to Participating Ameristeel EPA Opt-In Members.**

The date by which Opt-In Forms, along with Proof of Paternity, must be postmarked and/or received by the Claims Administrator is _____ ("Opt-In Deadline").  If you submit a timely Opt-In Form along with Proof of Paternity and thereby qualify to receive an Individual Settlement Payment under the Settlement, two checks will be mailed to you within approximately sixty (60) days of the Opt-In Deadline.

IV.    **THE EFFECTIVE DATE OF THE SETTLEMENT**

A.    **Effective Date.**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

**056**

**EXHIBIT A**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

The Settlement Agreement shall become effective when the Settlement is considered as "Final." For purposes of this Settlement Agreement, "Effective Date" and "Final" mean:

(i) in the event that the Settlement has received Approval Order by the Court, then upon the passage of the applicable date for any interested party to seek appellate review of the Court's Approval Order of the Settlement without a timely appeal being filed; or

(ii) in the event that a timely appeal of the Court's Approval Order has been filed, then the Settlement Agreement shall be final when the applicable appellate court has rendered a final decision or opinion affirming the Court's approval without material modification, and the applicable date for seeking further appellate review has passed. In the event that the Court fails to approve the Settlement, or if the appropriate appellate court fails to approve the Settlement or if this Settlement Agreement is otherwise terminated: (1) this Settlement Agreement shall have no force and effect and the parties shall be restored to their respective positions prior to entering into it, and no Party shall be bound by any of the terms of the Settlement Agreement; (2) Ameristeel shall have no obligation to make any payments to the Participating Ameristeel EPA Opt-In Members, Plaintiffs or Plaintiffs' counsel; and (3) any settlement approval order or judgment shall be vacated.

## V. WHAT ARE MY RIGHTS?

### A. You May Opt-In to the Settlement.

If you wish to participate in the Settlement as a Participating Ameristeel EPA Opt-In Member and receive a $6,000, $3,000, or $1,000 Individual Settlement Payment (depending on your individual circumstances), please be sure to *properly and timely* complete and sign the attached Opt-In Form and send it to the Claims Administrator, along with Proof of Paternity, at the following address or email address:

Claims Administrator<br>
c/o _____<br>
[Claims Administrator]<br>
[ADDRESS]<br>
[Email address]

Please also be sure to update the Claims Administrator if your address or phone number has or will change.

Under the terms of the Settlement, you will receive an Individual Settlement Payment if and only if you submit a timely and valid Opt-In Form along with Proof of Paternity on or before _____, 2024. Potential Ameristeel EPA Collective Action Members who fail to submit a timely and valid Opt-In Form along with Proof of Paternity do not receive an Individual Settlement Payment and will not be bound by any release of liability.

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

**057**

**EXHIBIT <mark>A</mark>**

**Questions?  Call the Claims Administrator Toll Free at <mark>1-8xx-xxxx</mark>**

If a Potential Ameristeel EPA Collective Action Member disagrees with the Claims Administrator's determination of whether a timely and valid Opt-In Form along with valid Proof of Paternity was submitted—after consultation with Plaintiffs' Counsel and Ameristeel's counsel on a good faith basis—the Claims Administrator will allow the Potential Ameristeel EPA Collective Action Member to dispute such determination by submitting additional documents, information, and/or other evidence to prove that they fathered a baby born by natural birth during the Ameristeel EPA Covered Period. The Potential Ameristeel EPA Collective Action Member's dispute will not be reviewed without documentary evidence to support the claim. The Claims Administrator will jointly work with the Parties to resolve the dispute in good faith. Plaintiffs' Counsel and Ameristeel's Counsel shall jointly and expeditiously consider the dispute and any relevant evidence. If the Parties cannot agree over whether a Potential Ameristeel EPA Collective Action Member has submitted valid Proof of Paternity, after the Claims Administrator has made its final recommendation based on the evidence and information submitted, the Parties shall submit the unresolved dispute to the Court, and any determination by the Court is final and binding with no opportunity for further appeal.

## VI.    WHO ARE THE PLAINTIFFS AND THEIR LEGAL COUNSEL IN THIS COLLECTIVE ACTION?

### A.    Plaintiffs.

Plaintiffs Adrian Juarez Ortiz and William Phillips are former employees of Ameristeel.

### B.    Plaintiffs' Counsel.

The Court has approved the following attorneys to be collective counsel for the purpose of representing the interest of the collective action members for settlement purposes:

Craig Ackermann, Esq.
Ackermann & Tilajef, P.C.
315 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Tel. (310) 277-0614
Email: cja@ackermanntilajef.com

Brian Denlinger, Esq.
Ackermann & Tilajef, P.C.
2602 North Proctor Street, #205
Tacoma, Washington 98406
Tel: (253) 625-7720
Email: bd@ackermanntilajef.com

Matthew Clark, Esq.
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Ste. 300
Detroit, Michigan 48226

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

**EXHIBIT A**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

Tel: (313) 964-5600
Email: matt@unionlaw.net

Cheryl Legare, Esq.
Legare, Attwood & Wolfe, LLC
125 Clairemont Ave., Ste. 380
Decatur, Georgia 30030
Email: cblegare@law-llc.com

You may contact Plaintiffs' Counsel or the Claims Administrator should you have questions.

**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO AMERISTEEL.**

**VII.    WHAT FEES AND COSTS ARE INVOLVED?**

    **A.    Attorneys' Fees, Costs and Expenses.**

Plaintiffs' Counsel represented the Plaintiffs and collective on a contingency fee basis.  This means attorneys' fees could only be paid only if money was recovered for Plaintiffs and the collective, and then only for a reasonable portion of the amount recovered. Here, Plaintiffs' Counsel asked the Court for, and the Court granted an award of, fees and expenses equaling one third (1/3) of each Participating Ameristeel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000, etc.), which includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Litigation, and an additional up to $15,000 in out-of-pocket litigation costs that will be paid by Ameristeel on top of and in addition to the Individual Settlement Payments. Ameristeel did not oppose these requests.

Plaintiffs' Counsel will continue to pay the costs of this litigation. You are *not* individually responsible for any of those costs.

    **B.    Plaintiffs' General Release Payments.**

The Plaintiffs asked the Court to grant them a general release payment of $10,000 each ($20,000 total) in consideration for their global general release of liability and waiver of claims against Ameristeel. Ameristeel did not oppose this request.

**VIII.  WHAT MUST I DO NOW?**

If you are eligible and want to participate in the Settlement and receive an Individual Settlement Payment, you **MUST** sign and submit the attached Opt-In Form along with your Proof of Paternity to the Claims Administrator on-time and properly filled out. Please make sure to keep your contact information current by notifying the Claims Administrator of any changes.

**OR**

If you do not want to participate in the Settlement, you do not need to do anything.

Page **7** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

059

EXHIBIT <mark>A</mark>

**Questions?  Call the Claims Administrator Toll Free at <mark>1-8xx-xxxx</mark>**


**IF YOU DO NOTHING, YOU WILL NOT BE BOUND BY THE RELEASED CLAIMS
AND YOU WILL NOT BE SUBJECT TO THE TERMS AND CONDITIONS OF THIS
SETTLEMENT**

**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO AMERISTEEL**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU AMERISTEEL US, INC. et al.

**060**

# EXHIBIT 1B

EXHIBIT B

**Questions?  Call the Claims Administrator Toll Free at <mark>1-8xx-xxxx</mark>**

### OPT-IN FORM AND PROOF OF PATERNITY
**for Potential Ameristeel EPA Collective Action  Member's $6,000, $3,000, or $1,000 Individual Settlement Payment**

<mark>Name</mark>                                    _____
<mark>Address</mark>                                 _____
<mark>City, State, Zip Code</mark>             _____
<mark>Dates of Employment</mark>           _____
<mark>Email Address</mark>                     _____

Gerdau Ameristeel US, Inc.'s ("Ameristeel") records show that you are a male, and that during the Ameristeel EPA Covered Period,[1] you were employed by Ameristeel in a non-union position. However, only "Potential Ameristeel EPA Collective Action Members" are eligible for an Ameristeel Individual Settlement Payment. A "Potential Ameristeel EPA Collective Action Member" is a male who fathered a baby born through natural birth (i.e., not adoption or placement through foster care) at any time during the Ameristeel EPA Covered Period while they were employed by Gerdau Ameristeel US, Inc. in a non-union position.

**If you are a Potential Ameristeel EPA Collective Action Member and you would like to opt-in to this Settlement and receive an Individual Settlement Payment, you MUST: (1) sign and date this Opt-In Form (see below), and (2) submit this Opt-In Form to the Claims Administrator along with "Proof of Paternity" (i.e., documentary evidence that you fathered a baby during the Ameristeel EPA Covered Period).**

**Proof of Paternity may be provided through a child's birth certificate, the addition of a newborn to your Ameristeel-provided health insurance plan or the health insurance plan of your spouse during the Ameristeel EPA Covered Period, or through other reasonable evidence which the Parties shall jointly evaluate, with assistance of the claims administrator, on a good faith basis (e.g., prior requests for FMLA leave due to the birth of a child; etc.).** If possible, please submit a copy of your child's birth certificate as your Proof of Paternity.

By opting-in to this Settlement, you understand that you are irrevocably releasing and discharging Gerdau Ameristeel US, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers (the "Released Parties") from all claims and causes of action to be or that could be based upon the facts alleged in the *Adrian Juarez Ortiz, et al., on behalf of himself and all others similarly situated v. Gerdau Ameristeel US, Inc. et al.*," Case No. <mark>_____</mark>, as well as any applicable state, local, and/or federal laws based on the location of the Participating Ameristeel EPA Opt-In Member based on alleged violations resulting from Ameristeel's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Ameristeel Claims"). The Released Ameristeel Claims do not include any claims that the law does not permit each Participating Ameristeel EPA Opt-In Member to release.

By signing this Opt-In Form, I am also agreeing to representation by counsel for the Plaintiffs—including Ackermann & Tilajef, P.C., Gregory, Moore, Brooks & Clark, P.C., and Legare, Attwood & Wolfe, LLC—and I further agree to the fee payments of 1/3 of my Individual Settlement Payment to be made by Ameristeel to counsel for my case on top of my Individual Settlement Payment.

### YOU MUST SIGN AND SUBMIT THIS OPT-IN FORM, ALONG WITH PROOF OF PATERNITY, TO RECEIVE YOUR INDIVIDUAL SETTLEMENT PAYMENT:

Dated: _____          Signed: _____

---

[1] The Ameristeel EPA Covered Period is April 21, 2020 through December 31, 2022.

OPT-IN FORM
ORTIZ et al. v. GERDAU AMERISTEEL US, INC. et al.

**062**

# EXHIBIT 1C

EXHIBIT C

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

# NOTICE OF COLLECTIVE ACTION SETTLEMENT TO POTENTIAL MACSTEEL EPA COLLECTIVE ACTION MEMBERS

**TO:  All males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time between August 30, 2019 and December 31, 2022 while they were employed by Gerdau Macsteel, Inc. in a non-union position ("Potential Macsteel EPA Collective Action Members"):**

**THIS NOTICE MAY AFFECT YOUR RIGHTS
PLEASE READ IT CAREFULLY**

## I.    WHY SHOULD I READ THIS NOTICE?

The purpose of this Notice is to inform you of the potential resolution of a collective action lawsuit entitled "*Adrian Juarez Ortiz, et al., on behalf of himself and all others similarly situated v. Gerdau Macsteel, Inc. et al.*," Case No. _____, which is currently pending in the U.S. District Court for the Northern District of Texas (the "Litigation").

The Litigation alleges, in part, that Gerdau Macsteel, Inc. ("Macsteel" or the "Company") violated federal and state law by discriminating against males on the basis of sex and/or gender through a parental leave policy which allowed females, but not males, to take six weeks of paid parental leave for baby bonding and/or dealing with baby medical matters between August 30, 2019 through December 31, 2022 (i.e., the "Macsteel EPA Covered Period"). The lawsuit contains a collective action claim for gender-based discrimination in violation of the Federal Equal Pay Act (29 U.S.C. § 206(d)).

The Company strongly denies liability for all of Plaintiff Adrian Juarez Ortiz and Plaintiff William Phillips' (together "Plaintiffs") claims, and contends that it fully complied with federal and state law during the Macsteel EPA Covered Period.  The Company further contended that Plaintiffs' claims cannot be maintained as an EPA collective action. There is, therefore, a *bona fide* dispute regarding whether or not additional wages are owed to the Potential Macsteel EPA Collective Action Members.

On or around October 10, 2023, the parties reached a provisional settlement in this matter, which means the ultimate settlement ("Macsteel EPA Collective Settlement") is subject to Court approval.  The Parties entered into a long form Settlement Agreement ("Agreement") on or around December 28, 2023. On [*insert date of settlement approval*], the Court issued an order approving the Macsteel EPA Collective Action Settlement, certifying a collective action for settlement purposes, and directing the mailing of this Notice and Opt-In Form.  The Court has not expressed any opinion as to the validity of the claims raised in this case, and has not ruled on any of the causes of action prior to the Parties' agreement to settle.

To avoid additional expense, inconvenience, and risks of continued litigation, the Parties have concluded that it is in their respective best interests and the interests of the Potential Macsteel EPA Collective Action Members to settle the Litigation on the terms summarized in this Notice. The

Page 1 of 8
NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

**064**

EXHIBIT C

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

Settlement was reached after arms-length, non-collusive negotiations between the Parties, including through an all-day, private mediation session, and the Parties have determined that the Settlement is a fair, reasonable, and adequate way to resolve the disputed claims.

**Your rights may be affected by this Litigation** because, according to Macsteel's records, you are a male who was employed by Macsteel in a non-union position during the Macsteel EPA Covered Period. The "Potential Macsteel EPA Collective Action Members" under this Settlement include all males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time during the Macsteel EPA Covered Period while they were employed by Gerdau Macsteel, Inc. in a non-union position.

## II.    WHAT ARE THE TERMS OF THE SETTLEMENT?

The following are aspects of the Settlement preliminarily approved by the Court:

- The Gross Settlement Amount ("GSA") is the all-inclusive maximum settlement amount that Macsteel shall be obligated to pay in connection with the Settlement. The GSA consists of:
  - All Individual Settlement Payments to Participating Macsteel EPA Opt-In Members (as defined herein):
    - $6,000 Individual Settlement Payments to Participating Macsteel EPA Opt-In Members who fathered a baby born during the Macsteel EPA Covered Period between August 30, 2019 through December 31, 2022, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment;
  - attorneys' fees equaling one third (1/3) of each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000);
  - up to $15,000 for Plaintiffs' Counsel's out-of-pocket litigation costs;
  - $10,000 each ($20,000 total) to the named Plaintiffs as consideration for their global general release of liability and waiver of claims; and
  - all actual claims administration costs.
- The settlement shall be an "opt-in" collective action settlement, meaning that only Potential Macsteel EPA Collective Action Members who submit a timely and valid Opt-In Form along with Proof of Paternity (as described herein) will become Participating Macsteel EPA Opt-In Members and be entitled to an Individual Settlement Payment and shall release Macsteel from any and all liability for claims arising directly or indirectly from facts alleged in the Litigation.  Please also see the attached Opt-In Form (**Exhibit D**) for further details.
- Proof of Paternity means proof that a Potential Macsteel EPA Collective Action Member fathered a baby during the Macsteel EPA Covered Period.  Proof of Paternity may be provided by submitting the following documentary evidence to

Page **2** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

065

EXHIBIT C

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

the Claims Administrator along with an Opt-In Form: your child's birth certificate; the addition of a newborn to your Macsteel-provided health insurance plan or the health insurance plan of your spouse during the Macsteel EPA Covered Period; or through other reasonable evidence which the Parties agree to jointly evaluate on a good faith basis.

- Each Participating Macsteel EPA Opt-In Member will be entitled to an amount as set forth above and will receive two checks. One check shall be in the amount of 50% of the Individual Settlement Payment and shall be reported as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be issued to each Participating Macsteel EPA Opt-In Member. The second check shall be in the amount of 50% of the Individual Settlement Payment and shall be reported as 1099 income for which an IRS Form 1099 will be issued to each Participating Macsteel EPA Opt-In Member.

- Any checks that are not negotiated within 180 days will result in the amount associated with those checks to be deemed void, and the funds associated with such unnegotiated checks from Participating Macsteel EPA Opt-In Members shall be distributed pursuant to a *cy pres* to The Fatherhood Project.

- Every Participating Macsteel EPA Opt-In Member will release Macsteel from any and all liability for and for all claims and causes of action as set forth in Section III.A below. Participating Macsteel EPA Opt-In Members shall bear sole responsibility for any and all tax liabilities, except that Macsteel shall pay its portion of the employer-side payroll taxes in addition to the Individual Settlement Payments. Participating Macsteel EPA Opt-In Members are encouraged to seek independent advice regarding the tax consequences of their settlement awards.

- No employee benefit shall increase or accrue as a result of any payment made in connection with this Settlement.

## III.   <u>WHAT IS THE EFFECT OF THE SETTLEMENT?</u>

### A.   <u>Release of Claims.</u>

All Participating Macsteel EPA Opt-In Members, understanding that there is a *bona fide* dispute regarding wages they may be owed, among other things, will irrevocably release and discharge Defendant Gerdau Macsteel, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers (the "Released Parties") from all claims and causes of action to be or that could be based upon the facts alleged in the Litigation, as well as any other applicable state law based on the location of the Participating Macsteel EPA Opt-In Members based on alleged violations resulting from Macsteel's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Macsteel Claims"). The Release Period for the Released Macsteel Claims shall be identical to the Macsteel EPA Covered Period. The Released

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

**EXHIBIT C**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

Macsteel Claims do not include any claims that the law does not permit each Participating Macsteel EPA Opt-In Member to release.

The release of claims recited in this paragraph shall not apply to Potential Macsteel EPA Collective Action Members who do not submit an Opt-In Form.  If you do not timely submit an Opt-In Form with Proof of Paternity, you will not release any claims, and you will not receive any Individual Settlement Payment from this case.

Each Participating Macsteel EPA Opt-In Member who receives a payment is responsible for appropriately reporting the proceeds received as a result of this Settlement on his taxes, and agrees to hold the Released Parties harmless with respect to any dispute arising from or related to such reporting.

**B.**     **Payment to Participating Macsteel EPA Opt-In Members.**

The date by which Opt-In Forms, along with Proof of Paternity, must be postmarked and/or received by the Claims Administrator is _____ ("Opt-In Deadline").  If you submit a timely Opt-In Form along with Proof of Paternity and thereby qualify to receive an Individual Settlement Payment under the Settlement, two checks will be mailed to you within approximately sixty (60) days of the Opt-In Deadline.

**IV.**     **THE EFFECTIVE DATE OF THE SETTLEMENT**

**A.**     **Effective Date.**

The Settlement Agreement shall become effective when the Settlement is considered as "Final." For purposes of this Settlement Agreement, "Effective Date" and "Final" mean:

(i)     in the event that the Settlement has received Approval Order by the Court, then upon the passage of the applicable date for any interested party to seek appellate review of the Court's Approval Order of the Settlement without a timely appeal being filed; or

(ii)     in the event that a timely appeal of the Court's Approval Order has been filed, then the Settlement Agreement shall be final when the applicable appellate court has rendered a final decision or opinion affirming the Court's approval without material modification, and the applicable date for seeking further appellate review has passed. In the event that the Court fails to approve the Settlement, or if the appropriate appellate court fails to approve the Settlement or if this Settlement Agreement is otherwise terminated: (1) this Settlement Agreement shall have no force and effect and the parties shall be restored to their respective positions prior to entering into it, and no Party shall be bound by any of the terms of the Settlement Agreement; (2) Macsteel shall have no obligation to make any payments to the Participating Macsteel EPA Opt-In Members, Plaintiffs or Plaintiffs' counsel; and (3) any settlement approval order or judgment shall be vacated.

Page **4** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

067

EXHIBIT C

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

## V.    WHAT ARE MY RIGHTS?

### A.    You May Opt-In to the Settlement.

If you wish to participate in the Settlement as a Participating Macsteel EPA Opt-In Member and receive a $6,000 Individual Settlement Payment, please be sure to *properly and timely* complete and sign the attached Opt-In Form and send it to the Claims Administrator, along with Proof of Paternity, at the following address or email address:

Claims Administrator

c/o _____

[Claims Administrator]

[ADDRESS]

[Email address]

Please also be sure to update the Claims Administrator if your address or phone number has or will change.

Under the terms of the Settlement, you will receive an Individual Settlement Payment if and only if you submit a timely and valid Opt-In Form along with Proof of Paternity on or before _____, 2024. Potential Macsteel EPA Collective Action Members who fail to submit a timely and valid Opt-In Form along with Proof of Paternity do not receive an Individual Settlement Payment and will not be bound by any release of liability.

If a Potential Macsteel EPA Collective Action Member disagrees with the Claims Administrator's determination of whether a timely and valid Opt-In Form along with valid Proof of Paternity was submitted—after consultation with Plaintiffs' Counsel and Macsteel's counsel on a good faith basis—the Claims Administrator will allow the Potential Macsteel EPA Collective Action Member to dispute such determination by submitting additional documents, information, and/or other evidence to prove that they fathered a baby born by natural birth during the Macsteel EPA Covered Period. The Potential Macsteel EPA Collective Action Member's dispute will not be reviewed without documentary evidence to support the claim. The Claims Administrator will jointly work with the Parties to resolve the dispute in good faith. Plaintiffs' Counsel and Macsteel's Counsel shall jointly and expeditiously consider the dispute and any relevant evidence. If the Parties cannot agree over whether a Potential Macsteel EPA Collective Action Member has submitted valid Proof of Paternity, after the Claims Administrator has made its final recommendation based on the evidence and information submitted, the Parties shall submit the unresolved dispute to the Court, and any determination by the Court is final and binding with no opportunity for further appeal.

## VI.    WHO ARE THE PLAINTIFFS AND THEIR LEGAL COUNSEL IN THIS COLLECTIVE ACTION?

### A.    Plaintiffs.

Plaintiffs Adrian Juarez Ortiz and William Phillips are former employees of Defendant.

### B.    Plaintiffs' Counsel.

Page **5** of **8**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

068

**EXHIBIT C**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

The Court has approved the following attorneys to be collective counsel for the purpose of representing the interest of the collective action members for settlement purposes:

> Craig Ackermann, Esq.
> Ackermann & Tilajef, P.C.
> 315 South Beverly Drive, Suite 504
> Beverly Hills, California 90212
> Tel. (310) 277-0614
> Email: cja@ackermanntilajef.com
>
> Brian Denlinger, Esq.
> Ackermann & Tilajef, P.C.
> 2602 North Proctor Street, #205
> Tacoma, Washington 98406
> Tel: (253) 625-7720
> Email: bd@ackermanntilajef.com
>
> Matthew Clark, Esq.
> Gregory, Moore, Brooks & Clark, P.C.
> 28 W. Adams Ave., Ste. 300
> Detroit, Michigan 48226
> Tel: (313) 964-5600
> Email: matt@unionlaw.net
>
> Cheryl Legare, Esq.
> Legare, Attwood & Wolfe, LLC
> 125 Clairemont Ave., Ste. 380
> Decatur, Georgia 30030
> Email: cblegare@law-llc.com

You may contact Plaintiffs' Counsel or the Claims Administrator should you have questions.

**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO MACSTEEL.**

## VII.    WHAT FEES AND COSTS ARE INVOLVED?

### A.    Attorneys' Fees, Costs and Expenses.

Plaintiffs' Counsel represented the Plaintiffs and collective on a contingency fee basis.  This means attorneys' fees could only be paid only if money was recovered for Plaintiffs and the collective, and then only for a reasonable portion of the amount recovered. Here, Plaintiffs' Counsel asked the Court for, and the Court granted an award of, fees and expenses equaling one third (1/3) of each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000, etc.), which includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement,

Page **6** of **8**
NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

069

**EXHIBIT C**

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

attending to the administration of the Settlement, and obtaining a dismissal of the Litigation, and an additional up to $15,000 in out-of-pocket litigation costs that will be paid by Macsteel on top of and in addition to the Individual Settlement Payments. Macsteel did not oppose these requests.

Plaintiffs' Counsel will continue to pay the costs of this litigation. You are _not_ individually responsible for any of those costs.

### B.    Plaintiffs' General Release Payments.

The Plaintiffs asked the Court to grant them a general release payment of $10,000 each ($20,000 total) in consideration for their global general release of liability and waiver of claims against Defendant. Macsteel did not oppose this request.

## VIII.    WHAT MUST I DO NOW?

If you are eligible and want to participate in the Settlement and receive an Individual Settlement Payment, you **MUST** sign and submit the attached Opt-In Form along with your Proof of Paternity to the Claims Administrator on-time and properly filled out. Please make sure to keep your contact information current by notifying the Claims Administrator of any changes.

**OR**

If you do not want to participate in the Settlement, you do not need to do anything.

**IF YOU DO NOTHING, YOU WILL NOT BE BOUND BY THE RELEASED CLAIMS AND YOU WILL NOT BE SUBJECT TO THE TERMS AND CONDITIONS OF THIS SETTLEMENT**

**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO MACSTEEL**

NOTICE OF SETTLEMENT
ORTIZ, et al., on behalf of himself and all others similarly situate v. GERDAU MACSTEEL, INC. et al.

**070**

# EXHIBIT 1D

EXHIBIT D

**Questions?  Call the Claims Administrator Toll Free at 1-8xx-xxxx**

<u>**OPT-IN FORM AND PROOF OF PATERNITY**</u>
**for Potential Macsteel EPA Collective Action Member's $6,000 Individual Settlement Payment**

Name _____
Address _____
City, State, Zip Code _____
Dates of Employment _____
Email Address _____

Gerdau Macsteel, Inc.'s ("Macsteel") records show that you are a male, and that during the Macsteel EPA Covered Period,[1] you were employed by Macsteel in a non-union position. However, only "Potential Macsteel EPA Collective Action Members" are eligible for an Individual  Settlement Payment. A "Potential Macsteel EPA Collective Action Member" is a male who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time during the Macsteel EPA Covered Period while they were employed by Gerdau Macsteel, Inc. in a non-union position.

**If you are a Potential Macsteel EPA Collective Action Member and you would like to opt-in to this Settlement and receive an Individual Settlement Payment, you MUST: (1) sign and date this Opt-In Form (see below), and (2) submit this Opt-In Form to the Claims Administrator along with "Proof of Paternity" (i.e., documentary evidence that you fathered a baby during the Macsteel EPA Covered Period).**

**Proof of Paternity may be provided through a child's birth certificate, the addition of a newborn to your Macsteel-provided health insurance plan or the health insurance plan of your spouse during the Macsteel EPA Covered Period, or through other reasonable evidence which the Parties shall jointly evaluate, with assistance of the claims administrator, on a good faith basis (e.g., prior requests for FMLA leave due to the birth of a child; etc.).** If possible, please submit a copy of your child's birth certificate as your Proof of Paternity.

By opting-in to this Settlement, you understand that you are irrevocably releasing and discharging Gerdau Macsteel, Inc. and its past, present and/or future officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers (the "Released Parties") from all claims and causes of action to be or that could be based upon the facts alleged in  *Adrian Juarez Ortiz, et al., on behalf of himself and all others similarly situated v. Gerdau Macsteel, Inc. et al.*," Case No. _____, as well as any other applicable state law based on the location of the Participating Macsteel EPA Opt-In Member based on alleged violations resulting from Macsteel's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible (collectively the "Released Macsteel Claims"). The Released Macsteel Claims do not include any claims that the law does not permit each Participating Macsteel EPA Opt-In  Member to release.

By signing this Opt-In Form, I am also agreeing to representation by counsel for the Plaintiffs—including Ackermann & Tilajef, P.C., Gregory, Moore, Brooks & Clark, P.C., and Legare, Attwood & Wolfe, LLC—and I further agree to the fee payments of $2,000 to be made by Macsteel to counsel for my case on top of my Individual Settlement Payment.

<u>**YOU MUST SIGN AND SUBMIT THIS OPT-IN FORM, ALONG WITH PROOF OF PATERNITY, TO RECEIVE YOUR INDIVIDUAL SETTLEMENT PAYMENT:**</u>

Dated: _____         Signed: _____

---

[1] The Macsteel EPA Covered Period is August 30, 2019 through December 31, 2022.

Page **1** of **1**

# EXHIBIT 2

# Client Time By Project

Print | Close Window

Client: [ Gerdau II GA - 896                    ▼ ]

Time Date Range: [ 1/1/2001 ]  through  [ 1/1/2051 ]    [ Refresh ]

| Date | Client Name | Project | Description | Net Hours | Rate | Amount | Invoiced | Uninvoiced |
|------|-------------|---------|-------------|-----------|------|--------|----------|------------|
| 4/25/2023 | Gerdau II GA - 896 | Avi Kreitenberg | research on EPA settlement approval | 1.00 | $764.00 | $764.00 | $0.00 | $764.00 |
| 4/26/2023 | Gerdau II GA - 896 | Avi Kreitenberg | research on conditional settlement approvals | 1.40 | $764.00 | $1,069.60 | $0.00 | $1,069.60 |
| 4/27/2023 | Gerdau II GA - 896 | Avi Kreitenberg | research on incentive awards, Johnson and Perez cases | 2.40 | $764.00 | $1,833.60 | $0.00 | $1,833.60 |
| PROJECT TOTAL | | | | 4.80 | | $3,667.20 | $0.00 | $3,667.20 |
| 1/9/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of correspondence regarding separate Gerdau entities and paths forward. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 1/10/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel regarding issues with informal discovery received. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 1/12/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence regarding case developments. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 1/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 1/16/2023 | Gerdau II GA - 896 | Brian Denlinger | Call with co-counsel, and research into related issues. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 1/18/2023 | Gerdau II GA - 896 | Brian Denlinger | Research in preparation for mediation and mediation brief. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 1/19/2023 | Gerdau II GA - 896 | Brian Denlinger | Began prep for mediation brief, including review of employee data sheet from MC. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 1/19/2023 | Gerdau II GA - 896 | Brian Denlinger | Began reviewing mediation brief. | 0.75 | $676.00 | $507.00 | $0.00 | $507.00 |
| 1/20/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued review of mediation brief. | 1.08 | $676.00 | $732.33 | $0.00 | $732.33 |

**074**

| Date | Matter | Attorney | Description | Hours | Rate | Amount | | Total |
|---|---|---|---|---|---|---|---|---|
| 1/20/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued review of mediation brief. | 2.33 | $676.00 | $1,577.33 | $0.00 | $1,577.33 |
| 1/23/2023 | Gerdau II GA - 896 | Brian Denlinger | Finalized mediation brief and sent to co-counsel. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 1/26/2023 | Gerdau II GA - 896 | Brian Denlinger | Prep for mediation. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 2/7/2023 | Gerdau II GA - 896 | Brian Denlinger | Discussed case during firm meeting. | 0.20 | $676.00 | $135.20 | $0.00 | $135.20 |
| 2/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and opc. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/14/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 3/17/2023 | Gerdau II GA - 896 | Brian Denlinger | Prep for drafting PAM, including research into similar 23(b)(2) cases. | 1.08 | $676.00 | $732.33 | $0.00 | $732.33 |
| 3/22/2023 | Gerdau II GA - 896 | Brian Denlinger | Call with CJA and AK regarding case. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/22/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence regarding complaint and potential new client/claim. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/23/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel regarding union vs. non-union issue and filing complaint. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 3/24/2023 | Gerdau II GA - 896 | Brian Denlinger | Conference call with CJA and MC, and email summing up same. | 1.00 | $676.00 | $676.00 | $0.00 | $676.00 |
| 3/24/2023 | Gerdau II GA - 896 | Brian Denlinger | Outreach to potential co-counsel. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 3/24/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with potential co-counsel. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/28/2023 | Gerdau II GA - 896 | Brian Denlinger | Call with potential new co-counsel and MC and CJA. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 4/6/2023 | Gerdau II GA - 896 | Brian Denlinger | Prep for drafting PAM, and began drafting PAM. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 4/11/2023 | Gerdau II GA - 896 | Brian Denlinger | Prep for drafting PAM. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 4/11/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued prep for and drafting PAM. | 1.92 | $676.00 | $1,295.67 | $0.00 | $1,295.67 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | Adjustment | Total |
|---|---|---|---|---|---|---|---|---|
| 4/20/2023 | Gerdau II GA - 896 | Brian Denlinger | Quick review of redrafted complaint. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 4/24/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting PAM papers and related legal research. | 1.33 | $676.00 | $901.33 | $0.00 | $901.33 |
| 4/25/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research and drafting PAM papers. | 1.08 | $676.00 | $732.33 | $0.00 | $732.33 |
| 4/25/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of correspondence from OPC and co-counsel regarding complaint. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 4/25/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting PAM papers and related legal research. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 4/26/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting PAM papers and legal research for same. | 0.42 | $676.00 | $281.67 | $0.00 | $281.67 |
| 5/1/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of correspondence and case law regarding this action. Then reviewed informal discovery request from co-counsel MC. Correspondence regarding tolling agreement after review of same. | 0.42 | $676.00 | $281.67 | $0.00 | $281.67 |
| 5/4/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research and drafting PAM. | 0.67 | $676.00 | $450.67 | $0.00 | $450.67 |
| 5/4/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting PAM papers and legal research. | 0.67 | $676.00 | $450.67 | $0.00 | $450.67 |
| 5/5/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting PAM papers and legal research. | 2.08 | $676.00 | $1,408.33 | $0.00 | $1,408.33 |
| 5/11/2023 | Gerdau II GA - 896 | Brian Denlinger | Prepared for call with opc. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 5/11/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence regarding collective action and potential settlement. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 5/25/2023 | Gerdau II GA - 896 | Brian Denlinger | Drafted new tolling agreement for nationwide class and sent to co-counsel. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 5/31/2023 | Gerdau II GA - 896 | Brian Denlinger | Email OPC to set a mediator and mediation date. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 6/6/2023 | Gerdau II GA - 896 | Brian Denlinger | Revised Addendum after review of similar documents and draft complaint. | 0.67 | $676.00 | $450.67 | $0.00 | $450.67 |
| 6/6/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of edits to complaint and tolling agreement from opc, finalized both, and wrote back to opc re: same. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |

| Date | Matter | Attorney | Description | Hours | Rate | Amount | | |
|---|---|---|---|---|---|---|---|---|
| 6/7/2023 | Gerdau II GA - 896 | Brian Denlinger | Research into FLSA cases and court analysis within 11th and 5th Circuits regarding same. Correspondence with co-counsel. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 6/14/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and OPC. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 6/28/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and prep for call with opc. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 8/16/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence regarding client outreach. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 8/28/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondene with co-counsel and Rene. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 8/31/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of outreach efforts for 8th Circuit client. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 9/15/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of correspondence with co-counsel re: circuit court issues, legal research re: same, and drafted/sent email to OPC regarding same. | 1.17 | $676.00 | $788.67 | $0.00 | $788.67 |
| 9/15/2023 | Gerdau II GA - 896 | Brian Denlinger | Emails to and call with OPC. Email to co-counsel. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 9/22/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of confidentiality agreement from OPC and emails re: discovery still needed. Email to co-counsel re: same. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 9/27/2023 | Gerdau II GA - 896 | Brian Denlinger | Research of applicable law and legal issues, and preparation for mediation. | 0.83 | $676.00 | $563.33 | $0.00 | $563.33 |
| 9/29/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of status of case and email re: same. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 9/29/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of status of case and prior mediation brief for purposes of upcoming mediation. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 9/29/2023 | Gerdau II GA - 896 | Brian Denlinger | Began drafting mediation brief. | 1.67 | $676.00 | $1,126.67 | $0.00 | $1,126.67 |
| 9/29/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting mediation brief. | 0.83 | $676.00 | $563.33 | $0.00 | $563.33 |
| 10/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research and drafting mediation brief. | 3.25 | $676.00 | $2,197.00 | $0.00 | $2,197.00 |
| 10/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting mediation brief and legal research for same. | 1.00 | $676.00 | $676.00 | $0.00 | $676.00 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | Total |
|------|--------|-----------|-------------|-------|------|--------|--|-------|
| 10/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research, drafting mediation brief. | 3.58 | $676.00 | $2,422.33 | $0.00 | $2,422.33 |
| 10/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Began review of informal discovery and class data from opc. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 10/3/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued review of informal discovery and class data from OPC, and continued drafting mediation brief. | 2.75 | $676.00 | $1,859.00 | $0.00 | $1,859.00 |
| 10/3/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and OPC regarding mediation brief. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 10/3/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of emailed edits/comments to mediation brief from CJA, and began revising mediation brief. Sent revised/final brief to co-counsel. | 3.42 | $676.00 | $2,309.67 | $0.00 | $2,309.67 |
| 10/10/2023 | Gerdau II GA - 896 | Brian Denlinger | Final prep for mediation, and participated in mediation throughout day, including drafting MOU after mediation. | 10.00 | $676.00 | $6,760.00 | $0.00 | $6,760.00 |
| 10/11/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and opc re: settlement. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 10/20/2023 | Gerdau II GA - 896 | Brian Denlinger | Pulled prior draft of complaint for AK use; correspondence with co-counsel re: settlement agreement and case. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 10/31/2023 | Gerdau II GA - 896 | Brian Denlinger | Review of edits to complaint from opc and correspondence. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 11/1/2023 | Gerdau II GA - 896 | Brian Denlinger | Began prep for drafting long-form SA. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 11/1/2023 | Gerdau II GA - 896 | Brian Denlinger | Began drafting long-form SA. | 1.42 | $676.00 | $957.67 | $0.00 | $957.67 |
| 11/1/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting long-form SA. | 2.42 | $676.00 | $1,633.67 | $0.00 | $1,633.67 |
| 11/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting long-form, and began preparing notice and opt-in form. | 2.00 | $676.00 | $1,352.00 | $0.00 | $1,352.00 |
| 11/2/2023 | Gerdau II GA - 896 | Brian Denlinger | Finalized settlement notice and opt-in form, along with revisions to long-form SA, and sent to co-counsel. | 1.00 | $676.00 | $676.00 | $0.00 | $676.00 |
| 11/6/2023 | Gerdau II GA - 896 | Brian Denlinger | Legal research for objection rights in Section 216 EPA settlements, and made edits to long-form and notice / opt-in forms (and created 3 new opt-in forms) per co-counsel comments. Sent detailed email to | 3.08 | $676.00 | $2,084.33 | $0.00 | $2,084.33 |

078

| 11/6/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel. Finalized settlement and notice docs, and sent to OPC. | 0.42 | $676.00 | $281.67 | $0.00 | $281.67 |
| 11/30/2023 | Gerdau II GA - 896 | Brian Denlinger | Reviewed and revised long-form settlement agreement. Sent email to co-counsel re: same. | 0.83 | $676.00 | $563.33 | $0.00 | $563.33 |
| 11/30/2023 | Gerdau II GA - 896 | Brian Denlinger | Email to OPC re: settlement agreement after made final edits and reviewed class notice and opt-in form. | 0.75 | $676.00 | $507.00 | $0.00 | $507.00 |
| 11/30/2023 | Gerdau II GA - 896 | Brian Denlinger | Further correspondence with OPC and co-counsel. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 12/1/2023 | Gerdau II GA - 896 | Brian Denlinger | Correspondence re: approval motion, and quick research re: same. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 12/12/2023 | Gerdau II GA - 896 | Brian Denlinger | Began research for drafting Approval motion. | 1.42 | $676.00 | $957.67 | $0.00 | $957.67 |
| 12/12/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research for drafting Approval motion. | 2.83 | $676.00 | $1,915.33 | $0.00 | $1,915.33 |
| 12/12/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research for approval motion and began drafting motion. | 2.25 | $676.00 | $1,521.00 | $0.00 | $1,521.00 |
| 12/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting motion for approval and related legal research. | 2.08 | $676.00 | $1,408.33 | $0.00 | $1,408.33 |
| 12/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 0.75 | $676.00 | $507.00 | $0.00 | $507.00 |
| 12/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 0.75 | $676.00 | $507.00 | $0.00 | $507.00 |
| 12/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued motion for approval. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 12/13/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 2.92 | $676.00 | $1,971.67 | $0.00 | $1,971.67 |
| 12/14/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion and related legal research. | 3.67 | $676.00 | $2,478.67 | $0.00 | $2,478.67 |
| 12/14/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 1.33 | $676.00 | $901.33 | $0.00 | $901.33 |
| 12/15/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 1.33 | $676.00 | $901.33 | $0.00 | $901.33 |

| 12/15/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion. | 1.58 | $676.00 | $1,070.33 | $0.00 | $1,070.33 |
|---|---|---|---|---|---|---|---|---|
| 12/15/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion and related legal research for same. | 2.83 | $676.00 | $1,915.33 | $0.00 | $1,915.33 |
| 12/18/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued legal research and drafting approval motion. Correspondence with co-counsel re: same. | 4.25 | $676.00 | $2,873.00 | $0.00 | $2,873.00 |
| 12/18/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting approval motion and related legal research. Correspondence with co-counsel. | 5.17 | $676.00 | $3,492.67 | $0.00 | $3,492.67 |
| 12/19/2023 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting settlement approval motion, attorney and plaintiff declarations, and proposed order; continued legal research, and began finalizing same. | 4.42 | $676.00 | $2,985.67 | $0.00 | $2,985.67 |
| 12/19/2023 | Gerdau II GA - 896 | Brian Denlinger | Finished initial drafts of all approval motion papers after final edit, and sent same to co-counsel. | 1.50 | $676.00 | $1,014.00 | $0.00 | $1,014.00 |
| 1/2/2024 | Gerdau II GA - 896 | Brian Denlinger | Finalized motion papers after making additional edits and incorporating new info; email co-counsel re: same. | 1.50 | $676.00 | $1,014.00 | $0.00 | $1,014.00 |
| 1/10/2024 | Gerdau II GA - 896 | Brian Denlinger | Made CJA edits, finalized approval motion papers, and sent to OPC. | 1.42 | $676.00 | $957.67 | $0.00 | $957.67 |
| 1/11/2024 | Gerdau II GA - 896 | Brian Denlinger | Revisions to approval motion papers, and compilation of costs and lodestar/fees. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 1/12/2024 | Gerdau II GA - 896 | Brian Denlinger | Emails with co-counsel re: approval papers. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 1/22/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and OPC regarding complaint and approval papers. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 1/25/2024 | Gerdau II GA - 896 | Brian Denlinger | Call with CJA and OPC re: adding 79 class members as subclass to deal, and related amendments. | 0.83 | $676.00 | $563.33 | $0.00 | $563.33 |
| 1/26/2024 | Gerdau II GA - 896 | Brian Denlinger | Began drafting amended settlement per co-counsel and opc. | 1.25 | $676.00 | $845.00 | $0.00 | $845.00 |
| 1/26/2024 | Gerdau II GA - 896 | Brian Denlinger | Finished drafting amended SA and sent to co-counsel. Began prep for drafting amended class notice. | 1.08 | $676.00 | $732.33 | $0.00 | $732.33 |
| 1/29/2024 | Gerdau II GA - 896 | Brian Denlinger | Continued drafting revised class notice and complaint for subclass. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 1/29/2024 | Gerdau II GA - 896 | Brian Denlinger | Finished revised complaint and class notice, and sent to OPC. | 0.42 | $676.00 | $281.67 | $0.00 | $281.67 |

| Date | Matter | Attorney | Description | Hours | Rate | Amount | | |
|------|--------|----------|-------------|-------|------|--------|---|---|
| 2/12/2024 | Gerdau II GA - 896 | Brian Denlinger | Review of approval motion papers for updates to be made re: subclass, and emailed OPC regarding amendments to be made. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 2/22/2024 | Gerdau II GA - 896 | Brian Denlinger | Discussions with CJA re: case status. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 2/23/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with opc and co-counsel re: subclass issues. Convo with CJA re: same. | 0.75 | $676.00 | $507.00 | $0.00 | $507.00 |
| 2/23/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and OPC. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 2/27/2024 | Gerdau II GA - 896 | Brian Denlinger | Review of revised/amended SA and two class notices from OPC, and made edits to same. Sent back to co-counsel for review. | 1.83 | $676.00 | $1,239.33 | $0.00 | $1,239.33 |
| 2/29/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel re: case. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 3/1/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and opc. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 3/1/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with OPC, revised amended settlement and class notices, and sent to opc. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/4/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with OPC and co-counsel. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 3/4/2024 | Gerdau II GA - 896 | Brian Denlinger | Additional correspondence. Then reviewed amended complaint from opc and emailed opc re: same. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 3/5/2024 | Gerdau II GA - 896 | Brian Denlinger | Review of finalized complaint documents from JB. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/6/2024 | Gerdau II GA - 896 | Brian Denlinger | Reviewed edits to approval motion papers and sent full redlines back to opc. | 2.33 | $676.00 | $1,577.33 | $0.00 | $1,577.33 |
| 3/7/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence re: approval motion papers and updating same. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/12/2024 | Gerdau II GA - 896 | Brian Denlinger | Review of waiver of service docs. | 0.08 | $676.00 | $56.33 | $0.00 | $56.33 |
| 3/12/2024 | Gerdau II GA - 896 | Brian Denlinger | Revised CJA decl. and Plaintiffs' decl for approval motion, along with proposed order. Sent same to co-counsel. | 1.42 | $676.00 | $957.67 | $0.00 | $957.67 |
| 3/14/2024 | Gerdau II GA - 896 | Brian Denlinger | Final revisions to approval motion papers, and sent same to co-counsel and opc. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | |
|------|--------|-----------|-------------|-------|------|--------|---|---|
| 3/20/2024 | Gerdau II GA - 896 | Brian Denlinger | Finalized approval motion papers and began completed pro hac vice admissions docs. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 3/21/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence re: PHV admissions. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/21/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence re: local counsel. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/26/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel, and continued PHV admissions. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/26/2024 | Gerdau II GA - 896 | Brian Denlinger | Drafted NOA for Joel Cohen after looking up his info. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/26/2024 | Gerdau II GA - 896 | Brian Denlinger | Emails with local counsel, and research of local rules. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 3/27/2024 | Gerdau II GA - 896 | Brian Denlinger | N.D. Tex. / ECF research for JC admissions. | 0.50 | $676.00 | $338.00 | $0.00 | $338.00 |
| 3/27/2024 | Gerdau II GA - 896 | Brian Denlinger | Numerous correspondence with co-counsel re: PHV, local counsel issues, etc. Reviewed association of counsel agreement. Registered for N.D. Tex. ECF. | 0.92 | $676.00 | $619.67 | $0.00 | $619.67 |
| 3/27/2024 | Gerdau II GA - 896 | Brian Denlinger | Revised and finished PHV application; review of relevant case and LR for same; emails with co-counsel re: same. | 0.42 | $676.00 | $281.67 | $0.00 | $281.67 |
| 3/28/2024 | Gerdau II GA - 896 | Brian Denlinger | Emails with JC. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 3/28/2024 | Gerdau II GA - 896 | Brian Denlinger | Add'l correspondence with local counsel re: case. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 4/3/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with co-counsel and OPC re: approval motion. | 0.25 | $676.00 | $169.00 | $0.00 | $169.00 |
| 4/4/2024 | Gerdau II GA - 896 | Brian Denlinger | Correspondence with OPC and co-counsel, then drafted stipulated motion and sent to co-counsel. | 1.92 | $676.00 | $1,295.67 | $0.00 | $1,295.67 |
| PROJECT TOTAL | | | | 134.46 | | $90,888.21 | $0.00 | $90,888.21 |
| 3/24/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Call w/ BD + MC re status of case; emails re same; research re GA local counsel (split w/ Gerdau I) | 0.40 | $919.00 | $367.60 | $0.00 | $367.60 |
| 3/27/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Email to local GA counsel; legal research re circuit split + FLSA / EPA | 1.20 | $919.00 | $1,102.80 | $0.00 | $1,102.80 |
| 3/28/2023 | Gerdau II GA - | Craig J. Ackermann | Call w/ local counsel in GA re EPA case against Gerdau | 0.50 | $919.00 | $459.50 | $0.00 | $459.50 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | |
|---|---|---|---|---|---|---|---|---|
| 4/4/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Reviewed + edited P's EPA complaint to be filed in GA; call w/ Matt Clark re same | 1.10 | $919.00 | $1,010.90 | $0.00 | $1,010.90 |
| 4/5/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Reviewed + signed retainer agreement for GA EPA case | 0.30 | $919.00 | $275.70 | $0.00 | $275.70 |
| 4/20/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Edits to EPA parental bonding complaint to be filed in GA; emails to co-counsel re same | 1.30 | $919.00 | $1,194.70 | $0.00 | $1,194.70 |
| 4/25/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Email re informal discovery + settlement plan for resolution of the EPA case in GA | 0.40 | $919.00 | $367.60 | $0.00 | $367.60 |
| 4/26/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Emails re service award issue in the 11th circuit + EPA claims | 0.30 | $919.00 | $275.70 | $0.00 | $275.70 |
| 5/11/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Emails w/ BD + Matt Clark re TX + GA cases + nationwide mediation | 0.25 | $919.00 | $229.75 | $0.00 | $229.75 |
| 5/11/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Emails w/ local counsel re re-negotiating deal for nationwide EPA case | 0.50 | $919.00 | $459.50 | $0.00 | $459.50 |
| 5/25/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Emails re revised tolling agreement | 0.30 | $919.00 | $275.70 | $0.00 | $275.70 |
| 6/7/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Legal research re standards for approval of EPA + FLSA caps in the 8th and 11th circuits; outreach to Wizzy re another class rep needed in IA case | 1.60 | $919.00 | $1,470.40 | $0.00 | $1,470.40 |
| 6/14/2023 | Gerdau II GA - 896 | Craig J. Ackermann | Emails re marketing for IA client; emails re locking in mediation | 0.70 | $919.00 | $643.30 | $0.00 | $643.30 |
| PROJECT TOTAL | | | | 8.85 | | $8,133.15 | $0.00 | $8,133.15 |
| 4/20/2023 | Gerdau II GA - 896 | Erika Smolyar | Review emails regarding the draft GA complaint and briefly review the complaint. Speak with Mr. Ackermann regarding the same. | 0.10 | $413.00 | $41.30 | $0.00 | $41.30 |
| 4/25/2023 | Gerdau II GA - 896 | Erika Smolyar | Review Mr. Turner and Mr. Ackermann's emails regarding settlement discussions and a tolling agreement as to the EPA claims. Review the complaint more thoroughly to gain a better understanding of the allegations. | 0.30 | $413.00 | $123.90 | $0.00 | $123.90 |
| PROJECT TOTAL | | | | 0.40 | | $165.20 | $0.00 | $165.20 |
| 2/17/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Rc'd signed retainer for new case; opened/organized file across the board | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 3/27/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Emails re setting call w/ local counsel | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | Discount | Total |
|---|---|---|---|---|---|---|---|---|
| 5/2/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Review of Holding Agreement; updated file & calendar re same | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 6/5/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Emails re amended JPA / addendum follow up; drafted addendum and circulated | 0.50 | $200.00 | $100.00 | $0.00 | $100.00 |
| 6/6/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Review of emails re revisions to JPA Addendum; created clean copy & circulated to all counsel | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 6/15/2023 | Gerdau II GA - 896 | Jaclyn Blackwell | Wizzy invoice accounting | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| PROJECT TOTAL | | | | 1.40 | | $280.00 | $0.00 | $280.00 |
| **GRAND TOTAL** | | | | **149.91** | | **$103,133.76** | **$0.00** | **$103,133.76** |

084

# Client Time By Project

Print | Close Window

Client: Gerdau III TX - 928

Time Date Range: 1/1/2001 through 1/1/2051  Refresh

| Date | Client Name | Project | Description | Net Hours | Rate | Amount | Invoiced | Uninvoiced |
|------|-------------|---------|-------------|-----------|------|--------|----------|------------|
| 8/17/2023 | Gerdau III TX - 928 | Amanda Lutsock | Meeting with Team to discuss case. | 0.25 | $225.00 | $56.25 | $0.00 | $56.25 |
| 9/14/2023 | Gerdau III TX - 928 | Amanda Lutsock | Meeting with firm to discuss case. | 0.20 | $225.00 | $45.00 | $0.00 | $45.00 |
| PROJECT TOTAL | | | | 0.45 | | $101.25 | $0.00 | $101.25 |
| 8/17/2023 | Gerdau III TX - 928 | Aron Higgins | Firm meeting | 0.25 | $225.00 | $56.25 | $0.00 | $56.25 |
| 9/14/2023 | Gerdau III TX - 928 | Aron Higgins | Firm meeting | 0.20 | $225.00 | $45.00 | $0.00 | $45.00 |
| PROJECT TOTAL | | | | 0.45 | | $101.25 | $0.00 | $101.25 |
| 5/4/2023 | Gerdau III TX - 928 | Avi Kreitenberg | drafting complaint | 0.50 | $764.00 | $382.00 | $0.00 | $382.00 |
| 8/17/2023 | Gerdau III TX - 928 | Avi Kreitenberg | meeting re case update | 0.25 | $764.00 | $191.00 | $0.00 | $191.00 |
| 9/11/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing protective order | 0.50 | $764.00 | $382.00 | $0.00 | $382.00 |
| 9/13/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing OPC redline on protective order | 0.20 | $764.00 | $152.80 | $0.00 | $152.80 |
| 9/14/2023 | Gerdau III TX - 928 | Avi Kreitenberg | meeting re case update | 0.20 | $764.00 | $152.80 | $0.00 | $152.80 |
| 10/3/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing mediation brief | 0.70 | $764.00 | $534.80 | $0.00 | $534.80 |
| 10/10/2023 | Gerdau III TX - 928 | Avi Kreitenberg | mediation | 9.40 | $764.00 | $7,181.60 | $0.00 | $7,181.60 |
| 10/12/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing admin bids, reviewing redlines on PA order stip, reviewing redlines on MOU | 2.00 | $764.00 | $1,528.00 | $0.00 | $1,528.00 |

**085**

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | Adj | Total |
|---|---|---|---|---|---|---|---|---|
| 10/20/2023 | Gerdau III TX - 928 | Avi Kreitenberg | drafting complaint | 1.00 | $764.00 | $764.00 | $0.00 | $764.00 |
| 10/23/2023 | Gerdau III TX - 928 | Avi Kreitenberg | drafting complaint | 3.00 | $764.00 | $2,292.00 | $0.00 | $2,292.00 |
| 10/31/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing OPC redlines on complaint | 0.30 | $764.00 | $229.20 | $0.00 | $229.20 |
| 11/2/2023 | Gerdau III TX - 928 | Avi Kreitenberg | editing settlement agreement | 1.50 | $764.00 | $1,146.00 | $0.00 | $1,146.00 |
| 11/30/2023 | Gerdau III TX - 928 | Avi Kreitenberg | reviewing OPC and BD redlines on SA | 1.00 | $764.00 | $764.00 | $0.00 | $764.00 |
| PROJECT TOTAL | | | | 20.55 | | $15,700.20 | $0.00 | $15,700.20 |
| 5/4/2023 | Gerdau III TX - 928 | Brian Denlinger | Review of correspondence regarding EPA claims. | 0.17 | $676.00 | $112.67 | $0.00 | $112.67 |
| 5/11/2023 | Gerdau III TX - 928 | Brian Denlinger | Prepared for call with opc. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 5/11/2023 | Gerdau III TX - 928 | Brian Denlinger | Call with OPC. | 0.58 | $676.00 | $394.33 | $0.00 | $394.33 |
| 5/11/2023 | Gerdau III TX - 928 | Brian Denlinger | Email to co-counsel re: call with OPC. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 5/25/2023 | Gerdau III TX - 928 | Brian Denlinger | Drafted new tolling agreement for nationwide class and sent to co-counsel. | 0.33 | $676.00 | $225.33 | $0.00 | $225.33 |
| 9/14/2023 | Gerdau III TX - 928 | Brian Denlinger | Discussed case during firm meeting. | 0.20 | $676.00 | $135.20 | $0.00 | $135.20 |
| PROJECT TOTAL | | | | 1.94 | | $1,318.19 | $0.00 | $1,318.19 |
| 1/8/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Email w/ Matt + BD re data for class + needed data for GLN, not just GSN; legal research re same | 0.50 | $919.00 | $459.50 | $0.00 | $459.50 |
| 1/11/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Analysis of D's informal discovery responses; call w/ Matt re same; research re D's differing employing entities; research re liquidated damages + EPA claims | 1.40 | $919.00 | $1,286.60 | $0.00 | $1,286.60 |
| 1/15/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Drafted outreach letter/ad to current + former male employees of GLN; email to Rene at Wizzy re ad content; legal research re EEOC guidance on "two-tiered" parental leave policies | 1.20 | $919.00 | $1,102.80 | $0.00 | $1,102.80 |
| 1/18/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Zoom mtg w/ BD re damages | 0.10 | $919.00 | $91.90 | $0.00 | $91.90 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | Total |
|---|---|---|---|---|---|---|---|---|
| 1/26/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Emails re campaign re firm filing for case against parent company | 0.40 | $919.00 | $367.60 | $0.00 | $367.60 |
| 2/14/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Emails w/ BD + MC re follow-up case for the parent entity re parental leave gender claims | 0.30 | $919.00 | $275.70 | $0.00 | $275.70 |
| 2/14/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Emails re scheduling call re EPA issue for PC w/ claims in Georgia + next steps to expand the settlement | 0.30 | $919.00 | $275.70 | $0.00 | $275.70 |
| 2/15/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Call w/ BD + MC re long-form and second case against Ameristeel | 0.90 | $919.00 | $827.10 | $0.00 | $827.10 |
| 3/24/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Call w/ BD + MC re status of case filing and f/u case against related entity; emails re same; research re GA local counsel (split w/ Gerdau II) | 0.40 | $919.00 | $367.60 | $0.00 | $367.60 |
| 5/11/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Emails w/ BD + Matt Clark re TX + GA cases + nationwide mediation | 0.25 | $919.00 | $229.75 | $0.00 | $229.75 |
| 5/24/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Edits to nationwide complaint; emails to OPC re same | 1.50 | $919.00 | $1,378.50 | $0.00 | $1,378.50 |
| 8/16/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Strategizing re informal discovery + outreach to IA potential client of Gerdau | 0.50 | $919.00 | $459.50 | $0.00 | $459.50 |
| 8/17/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Team discussion re impact of case, prep for mediation, and IA Plf | 0.25 | $919.00 | $229.75 | $0.00 | $229.75 |
| 9/14/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Detailed discussion w/ team re need to figure out appropriate venue + need for pre-mediation assignments | 0.20 | $919.00 | $183.80 | $0.00 | $183.80 |
| 10/2/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Analysis of informal discovery letter; legal research re "benchmark" fees in the 5th Circuit; emails to co-counsel re informal discovery | 1.50 | $919.00 | $1,378.50 | $0.00 | $1,378.50 |
| 10/3/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Edits to mediation brief; emails w/ BD re same; legal research re comp settlements and then analysis of class size + amounts per class member in those cases; sent further emails to BD re same | 2.10 | $919.00 | $1,929.90 | $0.00 | $1,929.90 |
| 10/10/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Attended mediation by Zoom w/ Cheryl Legare, BD, AK, Matt Clark, and mediator Dina Jansenson; drafted MOU for nationwide EPA deal; legal research re personal jurisdiction in multistate + nationwide class or collective action claims in light of the Bristol Myers supreme court case | 9.00 | $919.00 | $8,271.00 | $0.00 | $8,271.00 |
| 10/11/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Calls w/ OPC to finalize EPA collective action settlement agreement | 0.70 | $919.00 | $643.30 | $0.00 | $643.30 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | Total |
|------|--------|-----------|-------------|-------|------|--------|---|-------|
| 10/12/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Edits to finalized MOU; began final deal | 1.00 | $919.00 | $919.00 | $0.00 | $919.00 |
| 10/23/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Mtg w/ AK re timeline for inclusion w/ complaint to be filed in Dallas; edits to complaint; mtg w/ AK again | 1.70 | $919.00 | $1,562.30 | $0.00 | $1,562.30 |
| 11/2/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Edited settlement agreement + proposed class notices | 1.90 | $919.00 | $1,746.10 | $0.00 | $1,746.10 |
| 11/30/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Reviewed settlement agreement + email chains re proposed edits to same | 0.50 | $919.00 | $459.50 | $0.00 | $459.50 |
| 12/20/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Began editing Motion for Approval and related papers | 2.40 | $919.00 | $2,205.60 | $0.00 | $2,205.60 |
| 1/8/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Edits to approval motion papers; edits to CJA Dec ISO same; edits to Proposed Order Granting same | 1.40 | $919.00 | $1,286.60 | $0.00 | $1,286.60 |
| 2/22/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Emails re settlement docs + updates to OPC + BD | 0.70 | $919.00 | $643.30 | $0.00 | $643.30 |
| 2/23/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Emails + analysis of settlement structure + bargaining history on adding MI folks to the TX EPA case; mtg w/ BD re same | 0.90 | $919.00 | $827.10 | $0.00 | $827.10 |
| 3/5/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Reviewed TX complaint + global edits to add in MI left-out opt-in persons; reviewed emails from OPC re filing case + settlement | 1.70 | $919.00 | $1,562.30 | $0.00 | $1,562.30 |
| PROJECT TOTAL | | | | 33.70 | | $30,970.30 | $0.00 | $30,970.30 |
| 8/17/2023 | Gerdau III TX - 928 | Erika Smolyar | Discuss updates on the case w/ team. | 0.25 | $413.00 | $103.25 | $0.00 | $103.25 |
| 9/14/2023 | Gerdau III TX - 928 | Erika Smolyar | Discuss case updates w/ team. | 0.20 | $413.00 | $82.60 | $0.00 | $82.60 |
| PROJECT TOTAL | | | | 0.45 | | $185.85 | $0.00 | $185.85 |
| 5/3/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Rc'd signed retainer & opened new case across the board for firm | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 5/4/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Met w/ CJA re EEOC charge question; research re same; sent email to team re same | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 6/7/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Updated file & calendar re fully-executed and effective Global Tolling Agreement | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 6/14/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Outreach to JAMS re Jansenson availability for mediation in October | 0.05 | $200.00 | $10.00 | $0.00 | $10.00 |

| 6/15/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Receipt of Jansenson Oct availability; compared to firm calendar; checked on Shabbat times in Oct; emails to team re confirming new list of dates | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
|---|---|---|---|---|---|---|---|---|
| 6/16/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails w/ JAMS re setting up 10/10/23 mediation date; updated calendar & receivables | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 6/30/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Receipt of JAMS Deposit Request & print for payment; update file | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 7/3/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re mediation invoice & IA plaintiff | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 7/5/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Receipt of JAMS Statement re initial fee owed; printed for bookkeeper & updated file | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 7/6/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Updated file re further docs & info from JAMS; response email re same | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 8/7/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Sent f/u emails to 7 PCs per Wizzy campaign w/ CJA & MC cc'd; paid Wizzy invoice online & printed for bookkeeper | 0.25 | $200.00 | $50.00 | $0.00 | $50.00 |
| 8/16/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Review + responses to CJA emails re mediation date, informal discovery, and search for IA client; sent f/u emails to 13 PCs | 0.45 | $200.00 | $90.00 | $0.00 | $90.00 |
| 8/17/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Discussion of case with whole team at firm meeting + next steps | 0.25 | $200.00 | $50.00 | $0.00 | $50.00 |
| 9/1/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Sent email f/u's to 8 new leads; internal emails w/ team and Rene re same; paid invoice online & printed for bookkeeper | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 9/14/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Discussion of case at firm meeting - venue in TX question, pre-mediation drafting, etc. | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 9/24/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file & tasks re finalizing / signing confidentiality stip agreement | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 10/3/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Review of attorney emails re mediation brief & edits & timing; update file re inf doc production | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 10/4/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re mediation attendance and Zoom link; signed mediation agreement for CJA; sent in DS to clients, BD, and co-counsel | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 10/9/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails / DocuSign updates re signatures on mediation confidentiality agreement; filled out attendee form; sent both to JAMS/mediator & updated file | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | Total |
|------|--------|-----------|-------------|-------|------|--------|---|-------|
| 10/10/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Review of Artman/MO Ie, updated file, receivables, and tasks | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 10/27/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re tolling agreement expiration next week | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 10/30/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Review of emails between counsel; update calendar & tasks re tolling agreement extension | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 11/2/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file and tasks re BD draft SA + Notices | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 11/8/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file & tasks re finalized drafts of SA + 4 Notices; scanned in and saved JAMS refund check | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 11/30/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Updated tasks & file re OPC redlines to SA / Notice; updated again re BD responses to same; also emails/updates re indefinite extension on tolling agreement & calendar update for same | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 12/14/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re final SA ready for signatures; sent DS to 3 attorneys and 2 clients; updated tasks | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 12/18/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re approval motion; gathered firm's time on 3 Gerdau clients; checked DocuSign and hit resend to client Phillips. | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 12/19/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Review BD email; update file re Motion for Approval; update tasks as well; hit resend in DS to client | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 12/20/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re costs on Gerdau II / III; gathered A&T costs and circulated; receipt of all signatures to SA on our side; sent to OPC and updated tasks & file | 0.45 | $200.00 | $90.00 | $0.00 | $90.00 |
| 12/28/2023 | Gerdau III TX - 928 | Jaclyn Blackwell | Merge Def/OPC sigs with Plfs/ours for a fully executed copy of SA; updated file and tasks re same | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 1/2/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Review & respond to BD email; update file & tasks re revised Settlement Approval papers | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 1/10/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file & tasks re BD finalized settlement approval motion to OPC | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 1/16/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails w/ BD re lodestar allocation; updated Gerdau III TX | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 1/22/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Attempted to reset CJA password for TXND; help desk | 0.20 | $200.00 | $40.00 | $0.00 | $40.00 |
| 1/25/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Call w/ TXND Help Desk re CJA efiling permissions; re-applied for efiling in | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |

928
the Northern District as instructed;
Case 3:24-cv-00572-S   Document 20-6   Filed 04/12/24   Page 94 of 108   PageID 207

| Date | Matter | Timekeeper | Description | Hours | Rate | Amount | | |
|---|---|---|---|---|---|---|---|---|
| 1/29/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file & tasks re revised settlement docs and complaint (to add subclass) | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 2/23/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Review of OPC, CJA, and BD emails re EPA class issue; internal responses re same | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 2/27/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Review OPC email + attachments; update file & tasks re OPC redlines to settlement docs | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 3/4/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re finalized Amended SA; sent in DS to 2 Plfs + 3 Plfs' counsel; updated tasks & tiers | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 3/5/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Finalized collective action complaint; research TXND local rules and forms; draft 4 ancillary docs; TX, GA, MI, and DE SOS searches; internal emails w/ attorneys re same; updated tasks & file | 1.20 | $200.00 | $240.00 | $0.00 | $240.00 |
| 3/7/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Receipt of final sig on SA; finalized 4 Exs in PDF; compiled all & circulated; updated tasks; finalized all complaint docs in filing PDFs and opened a new case in TXND; updated file & MCL & team | 1.30 | $200.00 | $260.00 | $0.00 | $260.00 |
| 3/8/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Updated file re Dkts 5 & 6; updated team re issued summonses; research Austin process server re Ameristeel and arranged service online; call to company to cancel service request; updated tasks | 0.50 | $200.00 | $100.00 | $0.00 | $100.00 |
| 3/12/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Prepared new Waivers of Service of Summons dated today; served all docs on OPC; updated file & calendar & tasks accordingly; gathered updated time & costs for approval motion & saved/circulated | 0.70 | $200.00 | $140.00 | $0.00 | $140.00 |
| 3/14/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file & tasks re OPC signed waivers of summons + finalized redlines of stlmnt approval mtn | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 3/15/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Efiled both Waivers of Service Returned; updated file, calendar, MCL, & tasks | 0.25 | $200.00 | $50.00 | $0.00 | $50.00 |
| 3/20/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re finalizing settlement approval motion for filing ASAP and TXND admissions for co-counsel; task & f/u updates | 0.30 | $200.00 | $60.00 | $0.00 | $60.00 |
| 3/26/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails + file and task updates re approval motion, PHVs, local counsel, etc. | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 3/27/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails re local counsel PACER access, retainer payment, W9, JPA, etc.; finalized, signed, and sent JPA in DocuSign; printed W9 | 0.55 | $200.00 | $110.00 | $0.00 | $110.00 |

| Date | Project | Name | Description | | | | | |
|------|---------|------|-------------|---|---|---|---|---|
| 3/28/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Update file re 3 of 4 sigs rc'd on JPA; update file re PHV filings; emails re same; emails w/ local counsel re PACER issues | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 4/1/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Review emails w/ local counsel; update file re NOA for same; emails / task updates re filing motion for settlement approval | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| 4/3/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Finalizing Motion for Settlement Approval, Decls ISO, Exhibits, and PO; research local rules re page limits; internal emails re same / next steps | 0.95 | $200.00 | $190.00 | $0.00 | $190.00 |
| 4/8/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Filed finalized Stip to Extend Brief re forthcoming settlement approval motion; updated A&T costs & sent internal emails re same | 0.35 | $200.00 | $70.00 | $0.00 | $70.00 |
| 4/9/2024 | Gerdau III TX - 928 | Jaclyn Blackwell | Emails w/ CBL re updated time & costs on case | 0.10 | $200.00 | $20.00 | $0.00 | $20.00 |
| PROJECT TOTAL | | | | 15.70 | | $3,140.00 | $0.00 | $3,140.00 |
| 8/17/2023 | Gerdau III TX - 928 | Kanani Palafox | Firm Meeting | 0.25 | $225.00 | $56.25 | $0.00 | $56.25 |
| 9/14/2023 | Gerdau III TX - 928 | Kanani Palafox | Firm Meeting | 0.20 | $225.00 | $45.00 | $0.00 | $45.00 |
| PROJECT TOTAL | | | | 0.45 | | $101.25 | $0.00 | $101.25 |
| 8/17/2023 | Gerdau III TX - 928 | Rebecca Hirsch | Team case discussion at staff meeting | 0.25 | $200.00 | $50.00 | $0.00 | $50.00 |
| PROJECT TOTAL | | | | 0.25 | | $50.00 | $0.00 | $50.00 |
| **TOTAL** | | | | **73.94** | | **$51,668.29** | **$0.00** | **$51,668.29** |

| "GERDAU II GA" + "GERDAU III TX" GRAND TOTAL | 223.85 | | $154,802.05 |
|---|---|---|---|

# EXHIBIT 3

# Expense List

Print | Close Window

| Date | Client Name | Project | Type | Description | Quantity | Unit Amount | Amount |
|---|---|---|---|---|---|---|---|
| 6/29/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Mediation | JAMS - Mediation Deposit (includes $774.50 refund received 11/8/2023) | | | $2,113.00 |
| 6/29/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Postage/Mailing | Postage to mail check to JAMS | | | $0.63 |
| 6/30/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Mediation | JAMS - Initial Non-Refundable Fee | | | $350.00 |
| 7/6/2023 | Gerdau III TX - 928 | Craig J. Ackermann | Postage/Mailing | Postage to mail check to JAMS | | | $0.63 |
| 3/6/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Services Fees | Texas Secretary of State - charge for business entity search | | | $2.00 |
| 3/7/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Document Purchases | PACER FLAT FEE - federal case access / document pulls | | | $50.00 |
| 3/7/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Filing Fees - Complaint | Texas Northern District Court - fee to open new case | | | $405.00 |
| 3/20/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Services Fees | WSBA - fee to pull Certificate of Good Standing for Brian Denlinger | | | $28.27 |
| 3/27/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Services Fees | TXND - pro hac vice fee for Brian Denlinger | | | $100.00 |
| 3/27/2024 | Gerdau III TX - 928 | Craig J. Ackermann | Postage/Mailing | Postage to mail retainer check to local counsel | | | $0.68 |
| 4/8/2024 | Gerdau III TX - 928 | Craig J. Ackermann | In-house copying | Gerdau II (Phillips) - 112 pgs; Gerdau III (Juarez) - 100 pgs | 212.00 | 0.350 | $74.20 |
| **TOTALS** | | | | | **212.00** | | **$3,124.41** |

# EXHIBIT B
# TO APPENDIX

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**ADRIAN JUAREZ ORTIZ** et al., on behalf
of himself and all others similarly situated,

Plaintiffs,

v.

**GERDAU AMERISTEEL US, INC**. and
**GERDAU MACSTEEL, INC.,**

Defendants.

Case No. 3:24-cv-00572-S

HON. KAREN GREN SCHOLER

### DECLARATION OF PLAINTIFF ADRIAN JUAREZ ORTIZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND NOTICE OF COLLECTIVE ACTION SETTLEMENT

I, Adrian Juarez Ortiz, declare and state as follows:

1.      I am a named Plaintiff in this matter. I am over 18 years of age and otherwise competent to submit this declaration. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      I am a Texas resident. I was employed by Defendant Gerdau Ameristeel US, Inc. ("Ameristeel") at its Midlothian, Texas steel mill between October 23, 2017 to February 27, 2023. My wife gave birth to our child on June 15, 2022, and upon the birth of my child, Ameristeel provided me with no paid parental leave after I requested it. Instead, I used two weeks of my earned PTO time for paternity leave purposes.

3.      At the time of my child's birth, Ameristeel's parental leave policy—which only applied to non-union positions—provided a much more generous 12-14 weeks of paid maternity leave for "the employee who gave birth," including six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters." From my conversations with Ameristeel and its Human Resources department regarding its parental leave policy, I

1

**095**

understood that if I was a birth mother, I would be eligible to receive 6-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters," but that as a birth father, I was excluded from receiving any paid parental leave.

4.      On June 7, 2023, after me and my fellow named Plaintiff (William Phillips) were intending to allege individual and nationwide collective action claims for gender-based discrimination in violation of the EPA against Ameristeel, the parties instead entered into a Tolling Agreement to toll our gender-based discrimination claims under the EPA and the EPA claims of the Potential Ameristeel EPA Collective Action Members. Our tolled claims related directly to our challenge of Ameristeel's policy and practice of denying males 6-weeks of parental leave "for such things as baby bonding and/or dealing with baby medical matters" as discriminatory on the basis of sex on behalf of myself and a collective of other similarly situated male employees. Upon resolution of the sex discrimination claims at issue in this matter, I and Mr. Phillips commenced this action.

5.      Throughout the entirety of this action, including during negotiations with Ameristeel, I always represented and protected the interests of the Potential Ameristeel EPA Collective Action Members. I do not believe that my interests in this lawsuit are in conflict or in any way antagonistic to the interests of those of my fellow Potential Ameristeel EPA Collective Action Members, i.e., a nationwide class of all males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time from April 21, 2020 through December 31, 2022 (i.e., the "Ameristeel EPA Covered Period") while they were employed by Gerdau Ameristeel US, Inc. in a non-union position. Nor do my interests in this lawsuit conflict with the Potential Macsteel EPA Collective Action Members.

6.      I have reviewed the Settlement Agreement in detail. I understand its basic terms, including a "Gross Settlement Amount" that is presently unknown prior to the Notice process, but will consist of: (a) $6,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between April 21, 2020 through July 1, 2022, and did not take parental leave pursuant to the parental leave policy

implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (b) $6,000 Individual Settlement Payments to Participating Macsteel EPA Opt-In Members who fathered a baby born during the Macsteel EPA Covered Period between August 30, 2019 through December 31, 2022, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (c) $3,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period between July 2, 2022 through December 31, 2022, and did not take parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (d) all $1,000 Individual Settlement Payments to Participating Ameristeel EPA Opt-In Members who fathered a baby born during the Ameristeel EPA Covered Period, and who took parental leave pursuant to the parental leave policy implemented on January 1, 2023, plus the employer-side payroll taxes associated with the W-2 portion of each such Individual Settlement Payment; (e) attorneys' fees equaling one third (1/3) of each Participating Ameristeel EPA Opt-In Members' Individual Settlement Payment and each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per Individual Settlement Payment of $6,000; $1,000 per Individual Settlement Payment of $3,000; and $333.33 per Individual Settlement Payment of $1,000); (f) up to $15,000 for Plaintiffs' counsel's out-of-pocket litigation costs on top of and in addition to the Individual Settlement Payments; (g) $10,000 each ($20,000 total) to the Mr. Phillips and me as consideration for our global general release of liability and waiver of claims on top of an in addition to the Individual Settlement Payments; and (h) all actual claims administration costs. I understand that each Participating Ameristeel EPA Opt-In Member will receive an Individual Settlement Payment of either $6,000, $3,000, or $1,000, as described above. Based on my knowledge of the settlement negotiations, and the potential amount owed to me and the other Potential Ameristeel EPA Collective Action Members based on the claims alleged, I believe the Settlement obtained is fair and reasonable, especially in light of Ameristeel's

3

legal and factual defenses and other litigation risks.

7.      I have put forth time and effort into helping my counsel with this case, and I am aware of the $10,000 set forth in the Settlement Agreement as my General Release Payment and believe that it is a fair reflection of my contributions to date, and specifically because I must execute a full general release of all claims against Ameristeel through the date the general release is signed, and will include other standard non-monetary terms such as non-disparagement provisions. As a Plaintiff in this action, I provided significant assistance to my counsel. Among other things, I provided facts for settlement negotiations and the Collective Action Complaint, participated in interviews and phone conferences over several months, searched for and produced relevant documents, reviewed pleadings and documents in the case, reviewed documents and data provided by Ameristeel, communicated about the case with other Potential Ameristeel EPA Collective Action Members, provided my counsel with documents and information about Ameristeel's compensation plan and paid parental leave policy, kept in close contact with my attorneys regarding the case, and attended and actively participated in the October 10, 2023 all-day mediation. I also reviewed and executed the proposed Settlement Agreement, and spent time on this declaration and reviewed the associated Motion for Approval.

8.      As noted, as part of the Settlement Agreement, I have entered into a general release of all my claims against Ameristeel, which is broader than the release being given by the other Participating Ameristeel EPA Opt-In Members. This case also involved risks for me, including reputational and retaliation risks. Further, I agreed to undertake the financial and reputational risk of serving as a named Plaintiff and exposed myself to the risk of negative publicity or retaliation by anyone who opposed this case. Regardless of these risks, I pursued this case on behalf of the Potential Ameristeel's EPA Collective Action Members and Potential Macsteel EPA Collective Action Members to a successful resolution and settlement and agreed to participate in this case with no guarantee of personal benefit.

///

///

I declare under penalty of perjury under the laws of the United States and the State of Texas that the foregoing is true and correct.

Executed on _____3/24/2024_____, in _____Dallas_____, Texas.

By: _____
Adrian Juarez Ortiz

# EXHIBIT C
# TO APPENDIX

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**ADRIAN JUAREZ ORTIZ** et al., on behalf
of himself and all others similarly situated,

Plaintiffs,

v.

**GERDAU AMERISTEEL US, INC**. and
**GERDAU MACSTEEL, INC.**,

Defendants.

Case No. 3:24-cv-00572-S

HON. KAREN GREN SCHOLER

**DECLARATION OF PLAINTIFF WILLIAM PHILLIPS IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION
SETTLEMENT AND NOTICE OF COLLECTIVE ACTION SETTLEMENT**

I, William Phillips, declare and state as follows:

1.      I am one of the two named Plaintiffs in this matter. I am over 18 years of age and otherwise competent to submit this declaration. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      I am a Georgia resident. I was employed by Defendant Gerdau Ameristeel US, Inc. ("Ameristeel") at its Cartersville, Georgia steel mill as a Stand Builder from September 21, 2020 to September 30, 2022. My wife gave birth to our child on May 25, 2021. When our child was born, I requested paternity leave from Ameristeel, but my request was denied. Rather, I used two weeks of my accrued vacation time for paternity leave and baby bonding purposes.

3.      At the time of my child's birth, Ameristeel's parental leave policy—which only applied to non-union positions—provided a much more generous 12-14 weeks of paid maternity leave for "the employee who gave birth," including six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters." I did have conversations

1

**100**

with Ameristeel's managers regarding the pre-2023 parental leave policy at issue in this case, and it was my understanding that only birth mothers, but not birth fathers, were eligible to receive 6-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters."

4.      I retained my counsel in this matter in February 2023. After discussions between my counsel and Ameristeel's counsel, and because the other named Plaintiff (Adrian Ortiz) and I intended to file a Collective Action Complaint alleging individual and nationwide collective action claims for gender-based discrimination in violation of the EPA against Ameristeel, the parties entered into a Tolling Agreement to toll the gender-based discrimination claims under the EPA and the EPA claims of the Potential Ameristeel EPA Collective Action Members while the parties attempted to resolve the matter. After we resolved the matter, which occurred after the October 10, 2023 mediation that I participated in, Mr. Ortiz and I commenced this action for settlement approval purposes.

5.      Since I retained my counsel in February 2023, and throughout negotiations and subsequent to resolving this action, I always represented and looked out for the best interests of the Potential Ameristeel EPA Collective Action Members. I do not believe that my interests in this lawsuit are in conflict or in any way antagonistic to the interests of those of my fellow Potential Ameristeel EPA Collective Action Members, which includes all males, nationwide, who had a baby through natural birth at any time from April 21, 2020 through December 31, 2022 while they were employed by Defendant in a non-union position. Nor do my interests in this lawsuit conflict with the Potential Macsteel EPA Collective Action Members.

6.      I am familiar with and have reviewed in detail the proposed Settlement Agreement, and I understand its basic terms, including a presently unknown "Gross Settlement Amount" that will consist of Individual Settlement Payments of $6,000, $3,000, or $1,000 to Participating Ameristeel EPA Opt-In Members depending on when their child was born between April 21, 2020 through December 31, 2022, as well as whether they took parental leave pursuant to the parental leave policy implemented by Defendant on January 1, 2023, together with $6,000 Individual

Settlement Payments to all Participating Macsteel EPA Opt-In Members. The Settlement also includes, on top of and in addition to the Individual Settlement Payments, attorneys' fees equaling one third (1/3) of each Participating Ameristeel EPA Opt-In Members' Individual Settlement Payment and each Participating Macsteel EPA Opt-In Members' Individual Settlement Payment, up to $15,000 for my counsel's out-of-pocket litigation costs, $10,000 each ($20,000 total) to myself and Mr. Ortiz as consideration for our global general release of liability and waiver of claims, and all actual claims administration costs. Based on my knowledge of the settlement and the parties' negotiations (including Ameristeel's legal and factual defenses and other litigation risks), along with the potential amount owed to me based on the claims we alleged, I believe the Settlement obtained is fair and reasonable to me and all of the Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members.

7.      I have dedicated a significant amount of time and effort into assisting my counsel with this case, and I do believe that the proposed $10,000 General Release Payment that is anticipated by the Settlement fairly reflects both my contributions to the case and the fact that I am agreeing to sign a global general release of all potential claims I may have against Ameristeel through the date the general release is signed, along with other standard non-monetary terms like non-disparagement provisions. Since retaining my counsel, I provided significant assistance, such as providing and discussing facts relevant to settlement negotiation and the Complaint, participating in interviews and phone conferences with my counsel over several months, searching for and sending my counsel relevant documents, reviewing documents in the case, including the documents and data provided by Ameristeel, attempting to locate and communicating about the case with other Potential Ameristeel EPA Collective Action Members, providing my counsel with documents and information about Ameristeel's compensation plan and paid parental leave policy, keeping in close contact with my attorneys regarding the case, and attending—via Zoom—and actively participating in the October 10, 2023 all-day mediation. I also reviewed and signed the proposed Settlement, reviewed the Motion for Approval of our Settlement, and spent time on this declaration.

8.      As noted, I have agreed to enter into a general release of all my claims against Ameristeel as part of the Settlement, which is a broader release than that being given by the other Participating Ameristeel EPA Opt-In Members. This case did involve risks for me, including reputational risk and the risk of retaliation by, *inter alia*, former, current, and/or future employers. The financial and reputational risk of serving as a named Plaintiff does expose me to the risk of negative publicity or retaliation by anyone who opposed this case, but I still pursued the case on behalf of all Potential Ameristeel EPA Collective Action Members and Potential Macsteel EPA Collective Action Members. I also agreed to participate in this case with no guarantee of personal benefit.

I declare under penalty of perjury under the laws of the United States and the State of Georgia that the foregoing is true and correct.

Executed on _____3/26/2024_____, in _____Trion_____, Georgia.

By: _____

William Phillips